LONG *v.* STEMM ET AL.

[No. 26,726. Filed April 1, 1937. Rehearing denied June 8, 1937.]

Evans & Hebel, Owen S. Boling, Baker, Richman & Sharpnack, and Harlan Montgomery, for appellant.

Browne, Campbell & Gemmill, Joseph W. Verbarg,

*Poppenhuser, Johnston, Thompson & Raymond,* for appellees.

FANSLER, J.—Appellant began this action by complaint against appellees in which it is alleged that he is a resident owner of real estate and personal property and a taxpayer of the city of North Vernon, and a patron of the municipally-owned waterworks in that city, and that he brings the action on behalf of himself and others similarly situated; that on March 9, 1933, the city was, and still is, a city of the fifth class, and the owner and operator of unincumbered waterworks used in furnishing the city and its inhabitants with water for public and domestic use; that on April 27, 1934, the common council of the city, "purporting to act in pursuance of chapter 235 of the Acts of 1933," passed an ordinance creating a department of waterworks, to be under the exclusive management and control of three trustees; that on the same day, and immediately following the passage of the ordinance, the common council elected the defendants as trustees of the department of waterworks; that the defendant Stemm was mayor, and the other two defendants members of the common council, of the city, at that time; that all of the defendants were present at the meeting of the common council and participated in the passage of the ordinance and "pretended election of said trustees;" that, after their election, they "purported to qualify as such trustees," and that they are claiming to be trustees of the department by virtue of such proceedings, and not otherwise; that the General Assembly of 1933 passed another act, designated as chapter 259 (Acts 1933, p. 1147), which was approved on the same day as chapter 235; that chapter 259 was intended, and passed expressly, to apply to and govern cities of the fifth class owning and operating unincumbered water works, and provides that the management and control thereof shall be placed in a board of three

trustees to be appointed by the mayor, and specifically provides that no member of the common council or other officer of the city shall be eligible to serve on the board. It is alleged that the appointment of the defendants is wholly illegal, void, and without authority of law, for the following reasons: (1) That the appointment was made pursuant to chapter 235 of the Acts of 1933, whereas chapter 259 applied and was controlling, and its provisions were not followed. (2) That chapter 235 "only authorized the common council by ordinance to provide the method of the election of trustees, and did not authorize the common council to make such election or appointment of trustees." (There is no allegation that the council did not by ordinance provide the method of the election of trustees.) (3) The election of the defendants, who were mayor and members of the common council, respectively, was prohibited by chapter 259, "and, under all laws, was contrary to public policy and was wholly illegal and void and not capable of ratification." (4) Chapter 259 provided the term for which the trustees should be appointed, and the appointments made by the council were for terms in excess of that period. It is further alleged that the defendants advertised for bids for the furnishing and installation of an engine, in connection with the operation of the waterworks, at a total cost of approximately $20,000, and plan and intend to spend several thousand dollars additional in connection with the plant, and if not enjoined they will proceed and unlawfully issue bonds. It is further alleged that the defendants were at the time tearing down and wrecking structures appurtenant to the waterworks and in use in connection therewith. There is prayer for a decree declaring the board illegally constituted, and annulling and dissolving it, and declaring its acts illegal and void, and for a restraining order and an injunction.

A demurrer to this complaint was sustained. Plain-

tiff refused to plead further, and, from a judgment for the defendants, perfected this appeal, assigning error upon the ruling of the court in sustaining the demurrer.

In defense of the ruling of the trial court, appellees assert that they were at least de facto officers of the city, and that their contracts and acts are as valid as contracts and acts of *de jure* officers; that their right to serve and act can only be questioned by an information, in the nature of *quo warranto*, on the relation of some person claiming title to the office, or upon relation of the prosecuting attorney representing the public; that a court of equity has no jurisdiction to interfere with their right to act as officers by injunction.

Appellant concedes that this position would be well taken if appellees were *de facto* officers, but contends that they are not for the following reasons: (1) That, in operating a municipally-owned utility, a city acts in its proprietary capacity as distinguished from its governmental capacity; that it does not exercise any political or governmental functions, but only proprietary powers; that, in providing for a board of trustees to control a municipal water plant, the legislature did not vest them with any governmental duties or functions, and, since they are not so vested, they are not officers, but merely employees; (2) that, if the trustees are public officers, there is no authority in law for their election or appointment as made; that, under chapter 259, the common council had no power to appoint; the appointment must be made by the mayor; that, under chapter 235, the council had no power to appoint or elect, since, in the absence of express authority for self-appointment, appointment of members of the council by the council is void as against public policy; that one who holds office without the appearance of right, or color of law, is a mere intruder, and not a *de facto* officer; that it is clearly apparent that there is no law, or color of law, authorizing the council

to appoint the trustees, and that this is apparent to every one, and no one could be deceived or have any basis for believing that they are legally elected officers.

It is true that, in the operation of public utilities, a city acts in its private or proprietary capacity, but these utilities are generally managed by a board of public works, or the city council, or by a waterworks board. Chapter 235 of the Acts of 1933 (Acts 1933, p. 1063), under which it is alleged appellees were appointed, provides for a "department of waterworks," as one of the departments of the city government, and appellees were appointed as trustees to manage that department. It cannot be seriously questioned that they are public officers.

It is the contention of appellant that "the appointment of trustees of the waterworks in the city of North Vernon was controlled by chapter 259, Acts of 1933." Chapter 235 and chapter 259 were passed at the same session of the legislature and approved on the same day. It is contended that chapter 259 is special in that it applies only to cities of the fifth class, whereas chapter 235 is general and applies to all cities, and that, where inconsistent general and special acts are passed at the same session of the legislature, the special act will control. Legislative intention is controlling, and there is no reason for resorting to implications if there are legislative expressions indicating that intention. *First Presbyterian Church of Fort Wayne* v. *City of Fort Wayne et al.* (1871), 36 Ind. 338, 343, is cited as authority for the proposition that: "When a power is conferred upon municipal authorities of a city and the manner in which the power is to be exercised is pointed out and prescribed, that mode must be pursued." But the language of the decision is: "When the legislature says that a thing shall be done in a particular manner, it cannot be done in a different manner,

and this is especially so, where there are negative words, that in effect prohibit the doing of the thing, unless it is done in the manner prescribed, as there are in the proviso." It will be noted that the rule applies to cases in which the legislature says that a thing *shall* be done in a particular manner. It is recognized in the opinion that, where two modes are provided for doing a thing, the city council has the right to adopt either mode. Both chapter 235 and chapter 259 authorize cities and towns, owning and operating unincumbered waterworks, to provide for the building of extensions and additions, and the issuance of bonds payable out of the revenue from such plants to pay the cost thereof. Chapter 235, in its title, expressly authorizes and provides for the operation, maintenance, and management of the plant. Management is not mentioned in the title of chapter 259, but section 14 of that act provides for the creation of a board of trustees. Chapter 235 applies to all cities and towns; chapter 259 applies only to cities of the fifth class. Chapter 254 of the Acts of 1933 (Acts 1933, p. 1134 ) is an amendment of chapter 155 of the Acts of 1929 (Acts 1929, p. 478), which authorizes cities of the fourth class, owning and operating unincumbered waterworks, to provide for extensions and additions to such waterworks, and the issuance of bonds payable out of revenue from the plant for the purpose of raising funds to pay for the extensions and additions. In the first section of the act of 1929, it is provided that any city of the fourth class *may* provide for extensions and additions and the issuance of bonds "in the manner prescribed in this act." The first section of chapter 235 provides that *any* city or town *may*, by ordinance adopted by the common council, create a department of waterworks, "subject to the provisions of this act as hereinafter set out." Chapter 259 provides that any city of the fifth class *may* provide for extensions and addi-

tions "in.the manner prescribed in this act." There is nothing mandatory in any of these provisions. They are merely permissive. No where in the act of 1929 is there a provision that cities of the fourth class *shall* follow that chapter, and no where in chapter 259 of the Acts of 1933 is there any provision that cities of the fifth class *shall* follow that chapter. Section 25 of chapter 235 is as follows: "This act shall, without reference to any other statute be deemed full authority for the construction, acquisition, improvement, equipment, maintenance, operation and repair of the works herein provided for and for the issuance and sale of the bonds by this act authorized, and shall be construed as an additional and alternative method therefor and for. the financing thereof, and no petition or election or other or further proceeding in respect to the construction or acquisition of the works or to the issuance or sale of bonds under this act and no publication of any resolution, ordinance, notice or proceeding relating to such construction or acquisition or to the issuance or sale of such bonds shall be required except such as are prescribed by this act, any provisions of other statutes of the state to the contrary notwithstanding; Provided, however, That all functions, powers and duties of the state board of health shall remain unaffected by this act."

In *Princeton Coal Mining Co.* v. *Lawrence* (1911), 176 Ind. 469, 476, 477, 95 N. E. 423, 426, it is said concerning acts of the legislature passed at the same session, that: "It is to be presumed that all are in the minds of the members of the legislature, and that when related to the same subject they are impressed with the same construction that, if possible, all may stand." It must be assumed that the Legislature had in mind chapter 259, and chapter 155 of the Acts of 1929, which, was amended at the session when sec-

tion 25 of chapter 235 was written, and that, when it was provided that "this act shall, without reference to any other statute be deemed full authority," those two statutes were in the mind of the legislature; and that, when it was provided that it "shall be construed as an additional and alternative method," those statutes were in mind, and that it was intended that it should be a method in addition to, and as an alternative for, those statutes as well as any others. It is not unreasonable to assume that, had the intention been otherwise, these statutes would have been expressly excluded from those to which section 235 was to be considered as "an additional and alternative method." It is clear that the contention that the city might proceed under either of the chapters is supported by persuasive argument, and at least not so unreasonable as to preclude an honest difference of opinion. But there is another question presented by the briefs which may have influenced the city council in its determination to act under chapter 235.

Appellees earnestly contend that section 14 of chapter 259 of the Acts of 1933, which provides for the creation of a board of trustees, is not embraced within the title and is not a matter properly connected with the subject embraced within the title, and that that section is therefore void under article 4, section 19, of the constitution. The title of the act is as follows: "An Act to authorize cities of the fifth class owning and operating unincumbered waterworks to provide for extensions and additions of such waterworks and the issuance of bonds payable from the revenue and receipts of such waterworks for said extensions and additions and declaring an emergency." The contention is vigorously presented and supported by persuasive argument. While it cannot be said that the contention could be sustained, if it were necessary to a decision of the case, the question presents difficulties, and there is room for

a reasonable difference of opinion. If the contention were determined to be sound, and section 14 of chapter 259 void and inoperative, the city council had no alternative but to proceed under chapter 235.

Appellant earnestly contends that, even though the procedure under chapter 235 is an additional and alternative method, the board of trustees is unlawfully constituted, for the reason that the council could not legally appoint or elect the mayor or its own members as trustees; that such an appointment or election is against public policy and is wholly void. But, under certain other statutes, the legislature has provided that the mayor, and, in some instances, the president of the town board shall be members of the board of waterworks trustees *ex officio*. In section 14 of chapter 259, *supra*, it is provided that: "No member of the common council or other officer of said city shall be eligible to such appointment." This is a clear and specific declaration of policy. It might be argued with some force that the fact that the legislature excluded council members from eligibility to the board under one act, where there were but three members provided for, and failed to exclude them under the other act, where there might be five members, indicates that the legislators saw some difference in the situation, and that there was no intention to exclude them under the other.

Appellant has cited *Meyer et al* v. *Town of Boonville et al.* (1904), 162 Ind. 165, 70 N. E. 146, and the cases there cited, to support the view that a taxpayer may maintain an action for an injunction, to restrain contracts and acts of public officials. But all of those cases involve the legality of the action of the officers, and not the legality of their election or appointment. Illegal action may be enjoined by a taxpayer without regard to whether the officers are *de jure* or *de facto*. The question here is whether *de facto* officers may

be enjoined from acting and contracting for the sole reason that they are not legally elected and qualified, and where the acts would not be enjoined if they were performed by *de jure* officers.

It must be concluded that there was at least color of statutory authority for the election of appellees, and that they are at least *de facto* officers. The demurrer was properly sustained.

Judgment affirmed.