CITY OF CROWN POINT, ETC. *v.* HENDERLONG LUMBER COMPANY, INC. ET AL.

[No. 20,070. Filed May 10, 1965. Rehearing denied June 9, 1965. Transfer denied October 19, 1965.]

*Wendell C. Hamacher*, of Crown Point, for appellant.

*Hodges, Ridgely, Davis, Gruenberg & Draper, Porter R. Draper*, and *Albert Gruenberg*, of Gary, for appellees.

MOTE, J.—Appellees filed their petition, which they designate as a complaint and which hereafter will be referred to as a complaint, with the Public Service Commission of Indiana alleging, in material substance, that the three corporate appellees were, respectively, the developers, owners and sub-dividers of certain respectively named sub-divisions located within the corporate limits of the appellant City of Crown Point; that the remaining named appellees are either owners or purchasers of lots in one or more of said sub-divisions; that said city is a city of the Fifth Class and is the owner and operator of a municipal waterworks which is the only source of public water supply in said city; that said complainants need water mains extended to their lots and the appellant refused to make such extensions or "pay any part of the cost" thereof as

required by "Section 105-3, Rule 29" of the rules of the Public Service Commission. The prayer is for the said Commission to investigate the service of the waterworks of appellant and for the latter to be ordered to make reasonable extensions "requested" and "pay the costs thereof" within a reasonable time.

The complaint contains an allegation that appellant "unjustly discriminated" against the appellees in that the appellant refused to enter into an agreement with appellees upon the same terms and conditions as to reimbursement of costs of extensions as the appellant allegedly had previously contracted with a named individual. This particular count of the complaint need not be further noticed, however, as appellees do not argue the point but say in their brief that "they are not depending to any extent on the discrimination feature."

Appellant moved to dismiss the complaint upon the alleged ground, in effect, that said Rule 29 of the Commission refers to "public utilities" as defined in Acts 1933, ch. 190, Sec. 1, as amended by Acts 1947, ch. 318, Sec. 1, the same being §54-105, Burns' 1951 Replacement, and does not apply to "municipal utilities", and the Commission has no jurisdiction to entertain the said complaint. This motion was denied by the Commission with a statement directing attention to the Official Opinion No. 74 of the Attorney General, dated December 20, 1954, "which covers this exact question, . . . that this commission does have jurisdiction over line extensions and service of municipally owned water utilities."

Thereupon, appellant filed its affirmative answer to the complaint and the issues thus formed were submitted to the Commission, and the evidence thereon was heard by it on August 8, 1957. On June 13, 1958, the Commission entered its thirteen (13) findings and its order adverse to appellant. The latter filed its petition for a

rehearing on the several pertinent grounds that: the order of the Commission constituted an attempt to impair the "validity" of previously executed contracts in violation of the Constitution of Indiana, and the 14th Amendment to the Constitution of the United States; the order is not supported by sufficient evidence; and the order directs "action and requirements" of the appellant beyond the relief prayed for in the complaint. Appellant also filed its motion for a modification of the order of June 13, 1958, and motion to vacate the order of June 13, 1958, and dismiss the proceedings. The petition for a rehearing and said motions to modify, vacate, and dismiss were denied by the Commission by its order approved October 18, 1963.

Appellant has filed nine assignments of error, including the assignment that the "decision, ruling or order of the Public Service Commission of Indiana is ■ contrary to law," which, under the provisions of Acts 1957, ch. 189, Sec. 1, being §54-443, Burns' 1964 Cum. Pocket Supp., is sufficient to present the sufficiency of the facts found and the sufficiency of the evidence to sustain the findings of fact upon which the order is based.

It is of primary necessity, of course, that consideration be given first to the issue, appropriately raised and duly assigned, of whether the Commission possessed jurisdiction to entertain and determine the ■ issues duly raised in this particular proceeding. More precisely, we think, the jurisdictional issue is whether the Commission, under the legislative acts of this state, is vested with defined control of the acts, proceedings, and contractual relations of a Fifth Class city with relation to the operation, maintenance, and extensions of its municipally owned waterworks. There is no question of the jurisdiction of the Commission, as is conceded by all, for the purpose of "fixing rates"

to be "charged" by such city to the "patrons" of the water facilities for the "service" thereof, subject to divestiture of such jurisdiction by the voters of the municipality. See Acts 1913, ch. 76, Sec. 109, as variously amended by Acts of 1933, 1959 and 1961, §54-613, Burns' 1951 Repl. and Cum. Pocket Supp.

Seemingly, the Commission predicated its affirmative holding of jurisdiction upon two factors. The first factor is found in the Commission's Finding No. 5, which reads:

> "5. That on August 19, 1940, said City enacted Resolution Number 376, adopting the Public Service Commission water main extension rules; that this resolution has not been rescinded and must be considered in full force and effect."

The second factor is expressed in the Commission's Finding No. 10, as follows:

> "10. That without question it has jurisdiction in water main extension cases involving municipal utilities; that Official Opinion of the Attorney General Number 74, dated December 20, 1954, describes accurately the Commission's jurisdiction."

With reference to the above mentioned first factor, we have been unable, after diligent search, to find the referred to Resolution Number 376 in the record herein, nor do we find that it was ever admitted or received in evidence in this cause. The record contains some reference to a Resolution No. 376. A witness, Vernon Everett, testified that he is the Clerk-Treasurer of the appellant city and, at the end of considerable other testimony, said that he did not have with him a copy of "Resolution No. 376 of the Common Council of the city of Crown Point, dated August 19, 1940." During the course of the interrogation of said witness an "off-the-record" discussion took place by the attorneys for

the parties and at the conclusion thereof, attorney Norton said with apparent reference to said purported resolution:

"If we have what they are asking for, we will produce it without being subpoenaed."

However, the record discloses no production of the resolution by anyone. We are not informed whether such want of production was due to the failure of appellant to have what appellees' counsel was asking for or to some other undivulged reason.

There was introduced into evidence an exhibit referred to as "Public's Exhibit No. 1" which contained the heading: "ENGINEERING DEPARTMENT REPORT," dated July 11, 1957, and bore the signatory name of "Fred R. Witherspoon, Supervising Engineer." The latter was identified by the Public Counsel as the Engineer of the Public Service Commission. The exhibit appears to be a report made by the engineer to the Commission and concerns his visit to appellant city; that he contacted Harold A. Henderlong, President of appellee, Henderlong Lumber Company, Inc., and "verified" that application had been made to appellant for "financial assistance in extension of water mains" which was refused by appellant; that he contacted the Clerk-Treasurer of appellant city; and that he had inspected the minute records of the Common Council with reference to an agreement of August 19, 1940, with one Eugene H. Lewis which agreement was "later terminated."

The report is not shown to have been made under oath and it does not appear from the record that the engineer making the report, Fred R. Witherspoon, was a witness at the hearing or gave any testimony thereat. Nor does the record disclose to whom the report was delivered or that it was ever

received by the Commission, or approved by it, or made a part of the records of that body. We are, therefore, unapprised as to the purpose, relevancy, or materiality of this unauthenticated and unverified document. However, from the briefs of the parties, we gather that the underlying purpose of this report in evidence was an endeavor to establish that the appellant's Common Council had enacted the controverted Resolution No. 376 and thereby adopted the Commission's "water main extension rules." The said endeavor was apparently predicated upon the closing paragraph of the report in these words:

> "The Common Council did, however, pass Resolution Number 376 on August 19, 1940, adopting the Public Service Commission water main extension rules. An examination of the minute record of all subsequent actions of the Common Council, by this engineer, failed to reveal that this Resolution Number 376, had been rescinded."

No copy of the alleged Resolution Number 376 appears to have been made a part of or attached to said report.

It is apparent at once, without necessity of cited authority, that said unauthenticated and unsworn report of said engineer was wholly insufficient and without probative value to establish or prove the enactment, passage, or adoption by the Common Council of the appellant city of the referred to resolution. Assuming for the moment that a resolution numbered 376 had been, in fact, enacted by the said Common Council, there is no evidence as to what it contained, the terms, conditions, and provisions thereof, whether it was enacted and adopted in accordance with the legal and statutory requirements for validity, and whether

it was ever approved by the mayor of the appellant city. If the report were made by the engineer to the Commission, the statement therein, concerning the passage of the resolution would be, at best, but an unsupported conclusion of the engineer without any legal or binding effect upon appellant.

It follows, therefore, that the aforesaid finding No. 5 of the Commission is wholly unsustained by the evidence. Further, we fail to find any evidence in the record, and our attention has been drawn to no such evidence, which tends to prove that the appellant city ever adopted, approved, or assumed the water main extension rules of the Commission.

By its Finding No. 6, the Commission found:

"6. That complainants herein petitioned the Board of Public Works and Safety of the City of Crown Point to proceed under Resolution Number 376;..."

The petition referred to in said finding is in the record as appellees' Exhibit No. 2. We find no statement or reference in said petition, as shown by the record, to any resolution or specifically to Resolution No. 376. Nor do we find any other evidence in the record which supports said Finding No. 6, as worded. Consequently, we must hold that said finding is not sustained by the evidence.

In its order, based on its findings, the Commission stated:

"IT IS FURTHER ORDERED that the respondent City of Crown Point proceed under the Public Service Commission Rule 29, re water main extensions, (*See Exhibit 1*). *This is in accord with Respondent's Regulation No. 376.*" (Emphasis supplied.)

Apparently the "Exhibit 1" mentioned in the order

referred to the report of the Commission's engineer which we have previously discussed, considered, and disposed of. Likewise, we have already shown that the "Regulation [Resolution] No. 376" (bracketed word is ours) was not established by the evidence. This part of the Commission's order in this cause must and does rest upon said findings numbered 5 and 6. Since we have determined that said last numbered findings are not sustained by the evidence, the above quoted portion of the Commission's order must fall and be held for naught as not sustained by the findings of fact upon which it is based. Acts 1957, ch. 189, being §54-443, Burns' Cum. Pocket Supp.

We now come to a consideration of the second factor which involves the above quoted Finding No. 10 of the Commission. It is clear from this finding that the Commission considered and concluded that it possessed jurisdiction in water main extension cases of Fifth Class municipalities by reason of the therein referred to Opinion Number 74 of the Attorney General. The appellant devotes a considerable portion of its brief to a discussion and exemplification of the asserted inaccuracy and fallacy of said Opinion of the Attorney General, including long quotations from the opinion and the citation of authority and several sections of various statutes bearing on the question and the solution thereof. Appellees make no response to appellant's argument but content themselves by saying:

"Under the reasoning and authorities set forth in 1 above, this finding is clearly justified."

Turning to the "reasoning and authorities" advanced by appellees in "1" of their brief, we find

no mention made nor reference to the said Opinion of the Attorney General. We may conclude, therefore, that appellees agree with appellant that the Opinion Number 74 of the Attorney General enunciated an erroneous conclusion in holding that if a Fifth Class city has not voluntarily set up a water district and a board of trustees, pursuant to the provisions of Acts of 1933, ch. 235, §48-5305, Burns' Indiana Statutes (1950 [now 1963] Repl.), it must secure the approval of the Public Service Commission before extending a water main.

We think the appellees are justified in concurring with appellant's position with regard to said conclusion of the Attorney General as stated in his said Opinion No. 74. As we understand the expression in said opinion, it is held that those portions of the Acts of 1913, ch. 76, §54-601, et seq., Burns' 1951 Replacement, which allow cities of the Fifth Class to extend water mains without Commission approval, were repealed by implication by Acts of 1933, ch. 259, §48-5441, Burns' 1963 Repl. However, in the case of *Long* v. *Stemm et al.* (1937), 212 Ind. 204, 7 N. E. 2d 188, it was held concerning said Chapter 259 of Acts of 1933, as well as Chapter 235 of said Acts of 1933, that:

". . . There is nothing mandatory in any of these provisions. They are merely permissive. . . ."

On the ground that the Acts of 1913, ch. 76, is general and the Acts of 1933, ch. 259, is specific, the Attorney General, citing 50 Am. Jur., Statutes, Sec. 563, held that the pertinent parts of said Chapter 76 of the 1913 Acts were impliedly repealed by the 1933 Acts, ch. 259. In short, the Attorney General concluded that by reason of such implied repeal, Fifth Class cities, in extending their water mains,

must secure the approval of the Commission unless they bring themselves within the provisions of Chapter 235, Acts of 1933, §48-5301, et seq., Burns' 1963 Replacement, by setting up a water district and a board of trustees, in which event the board of trustees shall have "exclusive" control of the waterworks system. See Acts 1933, ch. 235, Sec. 5, §48-5305, Burns' 1963 Replacement. Since said Chapters 259 and 235 of Acts of 1933 were held to be merely permissive in *Long* v. *Stemm, supra,* it follows that insofar as the pertinent provisions now under consideration are concerned, there exists no irreconcilable conflict between said Acts of 1913, ch. 76, and said Chapters 259 and 235 of Acts of 1933. There is present no inconsistency and nothing to prevent said provisions of said respective Acts from standing together. It seems that, if so desired, a Fifth Class city may avail itself of the provisions of said Chapters 259 and 235 of the Acts of 1933 by compliance with the requirements thereof.

> "While the repeal of statutes by implication is recognized, this is not favored and that conclusion will not be indulged unless the later act is so repugnant to the earlier as to render the repugnancy or conflict between them irreconcilable. A court will always, if possible, adopt that conclusion which, under the particular circumstances in a given case, will permit both laws to stand and be operative. (Cases cited.)"

*Medias et al.* v. *City of Indianapolis et al.* (1939), 216 Ind. 155, Points 2, 3, 23 N. E. 2d 590. See also, *Freyermuth et al* v. *State ex rel.* Burns (1936), 210 Ind. 235, Point 2, 2 N. E. 2d 399; *Board of Commissioners of Whitley County* v. *Garty* (1903), 161 Ind. 464, 68 N. E. 1012, 1013; *Pomeroy et al.* v. *Beach et al.* (1898), 149 Ind. 511, 49 N. E. 370, 372; *Shea* v. *City of Muncie* (1897), 148 Ind. 14, 46 N. E. 138,

140; 50 Am. Jur., Statutes, Sec. 543; 50 Am. Jur., Statutes, Sec. 563.

It is proper to observe, also, that the wording of Chapter 259, Sec. 1, of Acts 1933 (§48-5441, Burns' 1963 Repl.) is such that it cannot be said, ■ in broad general terms, as was stated in the Attorney General's Opinion, to repeal by implication the pertinent portions of Chapter 76, Acts of 1913. And this for the reason that said Sec. 1, ch. 259, Acts 1933, is not applicable to all Fifth Class cities. It is limited to Fifth Class cities which own and operate *"unencumbered"* waterworks. "The word 'encumber' ordinarily means 'to charge, or burden with financial obligations or mortgages'", *Underwood* v. *Fairbanks, Morse & Co.* (1933), 205 Ind. 316, Point 8, 185 N. E. 118, 124. The waterworks of a Fifth Class city to be "unencumbered", as that word is employed in said Sec. 1, ch. 259, Acts 1933, must be free of any charge, burden, or encumbrance of financial obligations, mortgages, or liens for the satisfaction of which the holder thereof could look to the waterworks plant. The Opinion of the Attorney General makes no reference to the legal effect of said limited wording of Chapter 259, Acts 1933.

What we have said regarding the Opinion No. 74 of the Attorney General impels us to hold that we are not impressed with the view that said opinion is sufficiently cogent and convincingly accurate to be relied upon as the basis of a conclusion that the Commission possesses jurisdiction of and control over the actions and proceedings of the appellant Fifth Class city as to the water main extensions of its waterworks plant.

In seeking to support the finding and conclusion of the Commission that it has jurisdiction to hear and determine the issues made in this particular

proceeding, appellees urge upon us additional grounds and theories. They refer to the definition of the words "rate" and "service" as set forth in Acts 1913, ch. 76, Sec. 1(a), as added by Acts 1955, ch. 37, Sec. 1, and amended by Acts 1957, ch. 313, Sec. 1, being §54-105, Burns' 1964 Cum. Pocket Supp.; the requirement to furnish reasonably adequate services and facilities, as provided by Acts 1913, ch. 76, Sec. 105, as amended by Acts 1933, ch. 190, Sec. 15, and Acts 1937, ch. 14, Sec. 1, being §54-609, Burns' 1964 Cum. Pocket Supp.; and the provision giving the Commission jurisdiction for the purpose of "fixing rates" to be charged the patrons of the municipal utility for service, as found in Acts 1913, ch. 76, Sec. 109, amended by Acts 1933, ch. 190, Sec. 19, being §54-613, Burns' 1951 Repl., and conclude therefrom that the power of the Commission to fix "rates to be charged for service" includes the "power to fix charges to be made for extensions of mains", and further conclude that "a municipally owned utility is as much subject to the jurisdiction and the power of the Public Service Commission in fixing charges for extensions as is a public utility." Appellees furnish us with no Indiana authorities in support of their said conclusions.

The last above mentioned conclusion or proposal advanced by appellees was definitely dispelled by the holding of this Court in *Citizens Gas & Coke Utility, etc.* v. *Sloan et al.* (1964), 136 Ind. App. 326, 196 N. E. 2d 290 (transfer denied). In that case the Court, after an examination of §54-105, Burns' Repl. (1963 Supp.), §54-408 and §54-714, Burns' 1951 Repl., declared that:

"... municipal utilities, ... are not subject to the general grant of authority to the Public Service Commission. ..."

(See points 4 and 5 of the opinion in that case.)

It but remains to consider appellees' first above mentioned conclusion to the effect that the jurisdiction exercised by the Commission in this proceeding is warranted by its delegated authority of "fixing rates" as provided in Acts 1913, ch. 76, Sec. 109, as amended by Acts 1933, ch. 190, Sec. 19, being §54-613, Burns' 1951 Replacement. This granted jurisdiction remains unaffected by the amendatory provisions of the Acts 1959, ch. 326, Sec. 1, and Acts 1961, ch. 125, Sec. 1. The right of the voters to divest the rate fixing jurisdiction of the Commission, as provided for in said §54-613, Burns' 1951 Replacement, is not here involved.

In approaching the jurisdictional proposal made by appellees, the nature and character of their complaint seeking to invoke the jurisdiction of the Commission and the findings and orders made by the latter upon the issues made in the proceeding must be given attention. The only parts of the complaint material to the present inquiry are the following:

"5. That the said City is a Fifth Class City and is the owner and operator of a municipal waterworks, which waterworks is the only source of public water supply in said City; that said waterworks is owned, operated and maintained by said City under the provisions of the following Acts of the Indiana General Assembly, to-wit: Acts of 1913, Chapter 76 and Acts of 1933, Chapter 259.

"6. That these complainants need water mains extended to their respective lots in said subdivisions; that they have petitioned the Board of Public Works and Safety and the Common Council of said City to make such extensions; that the extensions requested are reasonable and would pay for themselves out of water revenue received therefrom within a period of six (6) years; that said City has refused to

make such extensions or to pay any part of the cost of such extensions as required under Section 105-3, Rule 29, of the Rules of the Public Service Commission of Indiana, approved November 8, 1945.

"7. That said City has also unjustly discriminated against these complainants in this, to-wit:

(a) That on the 19th day of August, 1940, said City entered into a written agreement with one Eugene H. Lewis whereby said Lewis agreed to pay the original cost of extending water mains of said waterworks into a subdivision known as Liberty Park Highlands, which subdivision lies partially within and partially without the corporate limits of said City.

(b) That said City Agreed to reimburse said Lewis for the cost of such extension in the following manner: said agreement was to remain in effect for a period of ten (10) years and the City was to pay Lewis the income received from each consumer for a period not to exceed eight (8) years and not to exceed a maximum of One Hundred Twenty Dollars ($120.00) per lot owner.

(c) That these complainants offered to enter into the same agreement with said City for the extension of watermains into said subdivisions, but that said City refused to make such an agreement or any other agreement whereby the City would pay any part or portion of the cost of extending watermains.

(d) That the complainants are in substantially the same circumstances as said Lewis except that their subdivisions are located entirely within the corporate limits of the City."

The relief prayed for is as follows:

"WHEREFORE, the undersigned complainants hereby request the Public Service Commission of Indiana to investigate the service of the waterworks of the City of Crown Point, Lake County, Indiana, and further request that the

City of Crown Point be ordered to make the reasonable extensions requested and to pay the costs thereof within a reasonable time from the date of said Commission's order, and for any further and proper relief and/or order deemed necessary in the premises."

The pertinent and material findings of the Commission are in these words:

"2. That the City of Crown Point owns and operates a municipal water works system under the provisions of Chapter 76 of the Acts of the Indiana General Assembly for the year 1913, and the Acts amendatory thereof and supplemental thereto.

3. That said City is a fifth-class City.

5. That on August 19, 1940, said City enacted Resolution Number 376, adopting the Public Service Commission water main extension rules; that this resolution has not been rescinded and must be considered in full force and effect.

6. That Complainants herein petitioned the Board of Public Works and Safety of the City of Crown Point to proceed under Resolution Number 376; that the Board denied said petition on March 29, 1957; that the Complainants then petitioned the Common Council of the City of Crown Point; that on October 15, 1956, said Council denied Complainants petition; that said Council refused to review the Board's ruling on May 6, 1957.

7. That said Council adopted Resolution Number 384 on February 4, 1946; that said Resolution requires that all developers, including Complainants herein, file specifications covering all proposed public improvements which specifications must be approved by the City engineer; that said Council passed Ordinance Number 530 on November 11, 1947; that said Ordinance requires, among other things, that the developer complete all improvements prior to construction or the developer shall file a completion bond or the developer shall make out

a certified check available to the city in an amount adequate for the completion of such improvements.

8. That Complainants herein complied with Ordinance Number 530 by signing an agreement with Respondent City and posting a completion bond.

9. That there is a need for water main extensions; that building will continue in this area, and; that these subdivisions presently being built will be fully occupied within six years.

. . .

10. That without question it has jurisdiction in water main extension cases involving municipal utilities; that Official Opinion of the Attorney General Number 74, dated December 20, 1954, describes accurately the Commission's jurisdiction.

11. That Resolution Number 384 and Ordinance Number 530 are not in conflict with Resolution Number 376 nor do they abrogate said Resolution.

12. That a municipal utility has the same standards of service to follow as a public utility; that any utility has a duty to serve all consumers in its territory; that all utilities shall fix their rates, with Commission approval, and take into consideration the cost of future water main extensions; that if a utility fails to do this, it cannot, later on, place the financial burden on new consumers.

13. That no contract or agreement executed between the Respondent and Complainants has been approved by the Commission as required by law; that it is not for the parties thereto to determine the validity and fairness of such contracts but rather the function of the Commission."

The pertinent orders of the Commission are stated:

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that the Respondent City of Crown Point proceed to make water main extensions in the following named subdivisions:

Morning Sun, Parkview and Fairview Heights.

IT IS FURTHER ORDERED that the Respondent City of Crown Point proceed under the Public Service Commission Rule 29, re water main extensions (See Exhibit 1). This is in accord with Respondent's Regulation No. 376.

IT IS FURTHER ORDERED that hereinafter all contracts or agreements entered into regarding water main extensions, by Respondent be first submitted to the Public Service Commission of Indiana for approval.

IT IS FURTHER ORDERED That all costs, including costs of bonds, incurred by Complainants in extending water mains in the three subdivisions be returned to Complainants. These costs shall be computed and added to the amount returnable under provisions of Rule 29 of this Commission.

IT IS FURTHER ORDERED that this Commission retain jurisdiction of the subject matter and of the party or parties herein for the purpose of entering any further order or orders as the Commission may deem necessary."

In *American Vitrified Products Company, et al.* v. *Public Service Commission, et al.* (1961) 176 N. E. 2d 145, (Ind. App.) we said at Point 4 thereof, appropos to the instant question:

"The Commission has broad authority and discretion *when it proceeds to fix rates,* but it cannot go beyond the limits imposed upon it by the Legislature in so doing. It can exercise only such powers as the Legislature delegates to it. . . ." (Emphasis supplied.)

The Court, in that case, then quoted the provisions of Acts 1933, ch. 190, Sec. 15, as amended by Acts of 1937, ch. 14, Sec. 1, being §54-609, Burns' 1951 Replacement, which sets forth the standards to be charged by the municipal utility, and discussed the requirements and application thereof. Following this the Court stated, at Points 6-9:

"However, the basic error committed by the Commission was its failure to follow the dictates of the statute. The wording of this section leaves no room for discretion on the part of the Commission. . . . Therefore, *the Commission must make a finding on each and every one of these items before it can arrive at a reasonable and just charge. . . .*

'It cannot be concluded or surmised that the Commission found the facts necessary.'

*Wabash Valley Coach Co.* v. *Arrow Coach Lines,* 1950, 228 Ind. 609, 615, 94 N. E. 2d 753, 755." (Emphasis supplied.)

It is readily apparent, therefore, that the complaint in this proceeding did not state facts or circumstances invoking the authority and jurisdiction of the Commission for the purpose of "fixing rates" to be charged by the appellant for water service to the patrons of the water facility, nor did the Commission make any of the required findings for such purpose, as held to be necessary in the *Vitrified Products* case, above referred to. The orders of the Commission, above quoted, make no mention whatsoever of any rates fixed by the Commission and are wholly inadequate in any respect for any such purpose. The entire proceeding appears to be nothing more than an attempt to present to the Commission for adjudication a dispute between the parties as to a contract entered into by them and which has been, in the main, as shown by the evidence in the cause, fully performed. It is clear that the Commission possesses no authority or jurisdiction, under the various applicable statutes, to entertain or determine upon any such proceeding.

While the provisions of Acts 1913, ch. 76, Sec. 124, § 54-714, Burns' 1951 Replacement, may be applicable only to Commission inquiries into and actions against public utilities, we are not required to, nor

do we in this cause and appeal, express any opinion with reference thereto.

In our opinion the Commission was without any jurisdiction in this proceeding and its orders entered herein are void.

The several orders of the Commission are hereby declared void, held for naught, and set aside, and this cause is now remanded to the Commission with instructions to sustain appellant's Motion to Dismiss the Complaint filed herein.

Faulconer, C. J., Bierly, P. J., Carson, Hunter, Prime, Smith, JJ., concur.

Martin, J., not participating.

NOTE.—Reported in 206 N. E. 2d 890.