Breitel, J. (dissenting).
Defendant successor lessor (Wellington) appeals from an order of the Appellate Division unanimously affirming, without opinion, an order and judgment (one paper) of the Supreme Court, New York County. The action is for an accounting of rent paid and for a declaratory judgment invalidating an appraisal of land under the Plaza Hotel in Manhattan. The appraisal was made pursuant to a land lease provision fixing rent at “ 3% of the value of all of the land” under the hotel. Plaintiffs, lessee and sublessee (Plaza and HCA) of a half fee interest in the land, sought an accounting of rent paid under the allegedly excessive appraisal. The Supreme Court granted summary judgment to plaintiffs lessee and sublessee, invalidating the appraisal and ordering a new appraisal which would reflect a correct interpretation of the lease valuation provisions. The appeal is pursuant to leave granted by the Appellate Division.
The issue is whether the appraisers exceeded their powers when they determined the value of the land in question as though it were vacant and free to be put to its highest and best use. By the terms of the lease, rent was to be fixed at “ 3% of the value of all of the land (wherever permitted by the context the word ‘ land ’ as herein used is intended to mean the land only, exclusive of the buildings and improvements thereon) ”.
Plaintiffs lessee and sublessee argue that, in valuing the land, the appraisers were required to consider the restriction to hotel use contained in the lease itself. However, the language of the lease does not compel this conclusion, nor would the contrary interpretation urged by defendant be unreasonable in light of the history of the transactions. Consequently, there is an issue as to the intention of the parties to the relevant documents, which cannot be decided on the basis of the present record.
The lease in question was a by-product of the 1953 sale of the Plaza Hotel (land and building) by Hilton Hotels Corporation *848 to Park 59th Street Corp. (Plaintiffs Plaza and HCA stand in the shoes of Park 59th Street Corp., defendant Wellington in the shoes of Hilton.) The consideration received by HilfQR is not fully disclosed by the record, but it apparently was secured, at least in part, by a second mortgage of $6,2Q0,QQQ, As part of the bargain, Hilton received an option, exercisable between October 1, 1965 and March 31, 1966, to repurchase one half of the fee in the land under the Plaza Hotel, exclusive of the building. If it wished to exercise the option, Hilton had to pay $400,0Q0 to the fee owner qs well as assume an allocable portion of real estate taxes and mortgage payments. M^coyer, upon exercising its option, Hüfon was obligated, upon request, to lease its one-half interest to the owner of the other half for a 20-year period, renewable for another 30 years. The form for the prospective lease was annexed to the option agreement, If the property was not being ‘ ‘ used primarily for hofel purposes ” when the option was exercised, Hilton bad the further option to enter into a tenancy in common with the other owner of the land.
. The lease form annexed to the option agreement fixed the rental at “ 3% of the value of all of the land ”• If the parties could not agree upon the value of the land, the dispute was fo be determined by appraisal. The present litigation arises from the inability of the parties to agree on a valuation and the attempt of appraisers to value the land under this provision.
Defendant lessor Wellington is the successor to Chatham Associates, Inc., which purchased the option from Hilton in 1965 (prior to its exercise) for $3,600,000. Chatham exercised the option, paying $400,000 to plaintiff Plaza.[1] Plaintiff Plaza had acquired title to the land through mesne conveyances from Park 59th Street Corp., the original purchaser from Hilton in 1953. In turn, plaintiff Plaza had given a long-term lease of the fee to plaintiff Hotel Corporation of America (HCA). By the terms of the agreement between Plaza and HCA, the latter would ultimately bear the burden of rental payments to defendant lessor Wellington.
After failure to agree upon a valuation for the land, defendant Wellington and plaintiff Plaza submitted the matter to appraisers in accordance with the lease provisions. The three *849 appraisers valued the land without regard to the limitations on use contained in the lease itself. Thus, all three appraisers valued the land for office-building uses, even though a provision of the lease required lessor’s approval for the construction of a new building designed “ primarily for purposes other than hotel purposes ”. Moreover, two of the appraisers valued the land as of February 1, 1966, even though the lease required valuation as of the beginning of the lease term, October 1, 1965. By a majority vote, the appraisers fixed the land value at $28,000,000. Plaintiffs (Plaza and HCA) have challenged the appraisal: first, because of the failure to consider the use restrictions of the lease; and second, because the appraisal was made as of the wrong date.
An initial issue is the scope of judicial review of the appraisers’ determination. Defendant lessor (Wellington) contends that, like the awards of arbitrators under a general arbitration elause, the appraisal is uof reviewable for mere errors of law. Under a geueral arbitration clause, the powers of the arbitrator are extensive and the scope of judicial review correspondingly small (see, e.g., Matter of National Cash Register Co. [Wilson], 8 N Y 2d 377; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7511.18). Assuming, however, the doubtful argument that appraisals are analogous to arbitration as to judicial review,[2] is always for the reviewing court to determine whether an arbitrator has 6 ‘ exceeded bis power ’ ’ under the submission (CPLR 7511, subd. [b], par. 1, cl. (iii]).
In this case, the issue submitted to the appraisers was narrow : the value of a particular piece of land at a particular time. The submission was limited to valuation as of a certain time, and, therefore, the courts may determine whether the appraisers pomplied with the submission. And, as plaintiffs further argue, whether the land should be valued as restricted to lease uses must first be determined in order to define the land which was submitted for appraisal. In such instances, courts have not refrained from inquiring into the correctness of appraisal assumptions regarding such restrictions (see, e.g., United Equities v. Mardordic Realty Co., 8 A D 2d 398, affd. 7 N Y 2d 911; Ruth v. S.Z.B. Corp., 2 Misc 2d 631, affd. 2 A D 2d 970, mot. for lv. to app. den. 2 N Y 2d 710). *850 There would seem to be little question that the appraisal was defective, if only for failure to employ the proper date for valuation. The appraisers’ determination in this respect exceeded their power under the submission, which mandated valuation as of the commencement of the lease term. Moreover, this three-month variance between lease date and valuation date cannot be presumed immaterial, considering the fluctuations of the real estate market.
While the old appraisal was defective because made as of the wrong date, the request for declaratory relief in the complaint, looking toward a new appraisal, also requires a judicial determination whether the lease use restrictions must be considered by the appraisers. Plaintiffs argue, and Special Term has agreed, that absent a manifestation of contrary intent it is presumed that land is valued subject to the existing restrictions upon its use. This proposition is indisputable where the restrictions are extrinsic to the lease itself (see, e.g., Kernochan v. Manhattan Ry. Co., 161 N. Y. 339, 348). There is less reason for assuming, however, that parties intended the restrictions of the lease itself to be considered in fixing value; for such restrictions are not pre-existing or beyond the control of the parties. Moreover, the fact that the lease rent is determined by the appraisal valuation inevitably has some circular effect. It is equally logical to consider the land which is valued as being, on the one hand, unencumbered or, on the other, restricted by the lease itself. The circle may be broken at either point, depending upon the assumption as to the sequence in which the use restrictions should be considered, before or after the lease takes or is given effect. In such cases, there must be reference to the language of the documents and, because of the ambiguity, to the business realities and underlying events of the transaction to determine the actual expressed intention of the parties.
The valuation clause, referring to “land only, exclusive of the buildings and improvements thereon ’ ’, provides no definite answer. Most probably, the reference to ‘ ‘ buildings ’ ’ was merely intended to exclude the value of the building, as to which the lessor had no interest. (On any view, the language is inappropriate to this kind of transaction. It is language most often used in connection with tax appraisal purposes, allocating values between land and improvements. Rarely, if ever, has it been used in connection with the effect on land value of *851 existing buildings or of restrictive uses derived internally from subsisting leases, or externally from zoning requirements, easements, or pre-existing covenants running with, the land.) There is some significance in the language employed in another provision relating to the division of rents and profits in the event of a tenancy in common: ‘ ‘ The rents and profits * * * or * * * proceeds * * * shall be allocable in proportion to t|ie value of [the] respective interests, and taking into account the above provisions with respect to the application thereto of the burden of any existing mortgage. ’ ’ The possible inference that the valuation should discount the use restrictions, based on the inclusion of express language in the last-quoted provision relating to the burden of a mortgage encumbrance and the absence of the same or parallel language in the valuation clause, is available, but hardly conclusive on summary judgment.
Plaintiffs Plaza and H'CA hypothesize a view of the underlying transactions between Hilton and Park 59th Street Corp. which would support the conclusion that the land was to be valued as restricted to hotel uses. This analysis is buttressed by the detailed affidavit of Roger P. Sonnabend, an interested party, and the conclusory affidavit of Joseph Binns, an apparently now-disinterested party. However, the record fails to reveal many of the details, events, and economic considerations in the transaction between Hilton and Park 59th Street Corp. which would be relevant to the construction of the valuation clause. Except for a conclusory characterization in the affidavit of Mr. Binns, none of the negotiations is described.
Nor does the argument made by plaintiffs that valuation for non-hotel uses would reap unconscionable benefits for defendant Wellington stand scrutiny. Thus, plaintiffs argue that the appraisers’ valuation would yield a gross yearly rental of $840,000 on an investment of only $4,000,000. However, the net rental after deduction of mortgage and tax obligations would be $680,000, a 17% return on a $4,000,000 investment (or a 13%% return on a $4,900,000 investment as claimed by an officer for defendant). But the 17% (or 13%%) figure is comparable to the 13% return on its investment charged as rent by plaintiff Plaza against plaintiff HCA pursuant to a sale and leaseback agreement.
Finally, the lowest of the three appraisals was $12,800,000. On this appraisal the percentage return to defendant Wellington *852 on its investment would be far less than 17% (or 13%%). This low appraisal was made by the appraiser selected by plaintiffs and, quite interestingly, also assumed that the land was to be valued free of use restrictions.
In conclusion, unless inquiry is barred by a rigid rule requiring that lease restrictions be considered in valuing leased property for rental purposes, triable issues exist as to the interpretation of the agreements, in light of the circumstances and business transactions out of which they arose (4 Williston, Contracts [3d ed.], § 616, esp. at pp. 652, 660-663).
In support of such a strict rule of construction plaintiffs rely heavily upon United Equities v. Mardordic Realty Co. (8 A D 2d 398, affd. 7 N Y 2d 911, supra). In that case a lease provision fixed rent at “ a sum equal to six per cent of the fair market value of the land covered by the first renewal lease as then [i.e. at the time of a modification agreement made 10 years after the original lease] fixed and determined by appraisal as hereinafter provided, but in no event less than the rental for the last year of the preceding term as hereby fixed ”. The court stated that, in valuing the land, the appraisers were required to consider lease provisions restricting the premises to certain uses. While the court referred to a general rule requiring this result, the case is distinguishable from the present one. There, the valuation was required by a modification made 10 years after the lease purportedly imposing restrictions first went into effect. In such circumstances, there is.no logical circularity, for the restriction clearly preceded in time the requirement for valuation. Since the restriction of the lease had been in effect for more than 10 years it would be rational to assume, as the court did, that the parties intended the land to be valued as its use was restricted by the lease. Moreover, as defendant Wellington has noted, the lease involved in this case contains the additional language “ exclusive of the buildings ”. While not sufficient to mandate ignoring the lease restrictions, this language introduces sufficient ambiguity to raise issues as to the intentions of the parties.
Defendant, in turn, relies upon 185 Lexington Holding Corp. v. Holman (19 Misc 2d 521, affd. 10 A D 2d 569, affd. 8 N Y 2d 965). There, the valuation clause read “ 6% * * * of the value of the land only, without improvements, at the time ”. The court held that the language ‘ ‘ without improvements ’ ’ *853 was meant to exclude the lease provisions themselves from the valuation, thus taking the case out of the supposed rule of the United Equities case (see, also, Ruth v. S.Z.B. Corp., 2 Misc 2d 631, affd. 2 A D 2d 970, mot. for lv. to app. den. 2 N Y 2d 710, supra). There, however, the court found a clear business purpose which confirmed its interpretation of the somewhat vague language. The valuation was for the purpose of fixing rent in a far-distant renewal period, and “ the express purpose of the landlord was to provide for rental upon the value of the land only which would not be subject to the acts of either party ” (19 Misc 2d, p. 522).
In sum, in order to uncover the meaning attributable to the documents between the parties to the Hilton option and lease, there must be further exploration of the underlying transactions. For this reason summary judgment directing a new appraisal with the requirement that the appraisers value the land as encumbered by the lease use restrictions should have been denied.
Accordingly, I dissent and vote to reverse the order of the Appellate Division, insofar as it affirmed the granting of summary judgment in favor of plaintiffs.
Order affirmed, etc.

. At one point, however, an officer of defendant stated that the total paid hy Chatham was $4,900,090 rather than $4,000,000.

. See, e.g., Matter of Delmar Box Co. (Aetna Ins. Co.), 309 N. Y. 60; see, also, CPLR 7601.