Samuel H. Hofstadter, J.
In this action for a declaratory judgment both the plaintiffs and the defendant move for summary judgment. The controversy arises out of a long-term *633 lease; the present parties are the successors in interest of the original parties to the lease.
The underlying lease was made on December 16, 1935 between The Gerry Estates, Inc. as lessor and 1040 Third Avenue Corporation as lessee. The plaintiffs became the fee owners in 1952, while the defendant took an assignment of the lease from the lessee in 1937 and at the same time assumed its obligations. The lease provided for an initial term of 20 years from January 1, 1936 and for two successive renewal terms of 20 years each. Both parties are definitely bound for the first renewal term commencing on January 1, 1956. The lease does not commit the parties irrevocably to the second renewal term, which comes into being only if the lessor does not at the end of the first renewal term exercise the option given by the lease to purchase the buildings on the premises from the lessee for $5,000. If this option is not exercised, the lease continues in effect for the second renewal term of 20 years from January 1, 1976. The parties are thus bound absolutely to a minimum term of 40 years and provisionally to an additional term of 20 years.
The demised premises are located on the west side of Third Avenue, Manhattan, and occupy the entire block front from 61st to 62nd Street. They extend to a depth of 150 feet along East 61st Street and to a depth of 100 feet along East 62nd Street. The lease provided for the erection of a two-story store and showroom building along Third Avenue and portions of the East 61st and 62nd Street frontages and for the remodeling of the three four-story brown stone buildings on East 61st Street into small apartment buildings. These improvements were to be made by the lessee at its expense, but pursuant to a contemporaneous loan agreement the lessor loaned the lessee $73,000 toward their cost. These improvements have all been made and paid for and, because of the general increase in costs, are today worth substantially more than the amount paid for them by the original lessee.
The lease binds the lessee to keep the foregoing improvements in good condition and tenantable order and further forbids the making of any structural alterations or changes or any other alterations or changes costing more than $5,000 without the lessor’s Avritten consent.
The lessee is required to pay taxes, assessments and other charges so that the stipulated rental is net to the lessor. During the initial term the lessee is bound to pay a fixed annual rent on an increasing graduated scale, and also additional rent equal to 25% of the amount by which the lessee’s annual gross income *634 from the premises exceeds $100,000. (By agreement with the defendant when it assumed the lease, the fixed annual rentals during the initial term were reduced and the base figure for the computation of rent on gross income was changed from $100,000 to $85,000. The gross income has never been enough to bring the provision for additional rent into play.)
Paragraph Thirty-Fifth of the underlying lease prescribes the method by which the rent for the renewal period is to be determined. It is to be 6% of: “ the full and fair value of the land demised which the same would sell for as one parcel considered as vacant and unimproved, in fee simple, by private contract, free of lease and unencumbered.”
It is provided that if the parties cannot agree on this rental, the same is to be determined by three arbitrators, one to be appointed by the lessor, a second by the lessee and the third by the two so appointed. If no award has been made by December 31, 1955 a new lease is to be executed notwithstanding, the lessee meanwhile to pay the rental in effect in December, 1955. This rental, under the 1937 amendatory agreement, is $16,250 per annum and is also the minimum for the renewal period. In accordance with this requirement, the parties have entered into a lease for the renewal term commencing on January 1, 1956, under which the rent is to be fixed later. Each of the parties has appointed an arbitrator; they have stipulated that the arbitrators so appointed may defer the selection of a third arbitrator until a final determination in this action of the proper meaning of the lease formula for the ascertainment of the value of the property. Neither the underlying lease nor any other agreement has a general arbitration clause.
The dispute which has moved both parties to seek a judicial determination of their rights is narrow and clear-cut. It is whether the arbitrators in determining the value of the property on which the rent for the first renewal term is to be based may take into account its restricted use under the provisions of the underlying lease. The defendant lessee argues that the lease provisions obligating it to maintain the existing buildings, as constructed and altered by its predecessor in interest, in good repair and forbidding it to make any alterations or changes costing more than $5,000 without the lessor’s written consent, limit the possible use of the demised premises to the operation of these very buildings. It urges that this restriction on use necessarily affects the value of the land and is an element properly to be considered by the arbitrators in determining its value under the lease formula. The plaintiffs insist, to the *635 contrary, that the clear and explicit language of the formula forbids consideration by the arbitrators of this restricted use as an element of the value of the land.
The resolution of the question so presented may affect vitally the value which must serve as the basis for the rent during the renewal term. Had a dispute arisen as to the correct meaning or application of a formula prescribed by the lease for the ascertainment of the renewal rent without arbitration, the propriety of resort to an action for a declaratory judgment would hardly be open to question. The use of arbitration as the instrumentality by which the rent is to be fixed in accordance with a stated formula should not lead to a different result. It is desirable that the true meaning of the formula be declared before the making of an award possibly grounded on something later held to be beyond the powers of the arbitrators. (See Civ. Prac. Act, § 1462, subd. 4.) Thus, we guard against an infirmity which may render an award abortive. There being an existing controversy of serious moment, the case is deemed an appropriate one for a declaratory judgment. It is significant that neither of the parties has raised any question regarding the fitness of the remedy and, indeed, both stress the need for a declaratory judgment now.
The defendant having moved for summary judgment, the plaintiffs cross-moved for like relief. Curiously, though the parties insist that there is no issue of fact, in the effort to uphold their opposing positions they have made many factual statements on which they are in utter disagreement. In view of the conclusion reached, I do not deem it necessary to go into these factual matters at length. It is sufficient for present purposes to say that, in general, they deal with the amount which each of the present parties invested in the property and the effect of the construction of the lease formula on the anticipated return on the investment. Each finds in the interpretation advocated by his adversary unfair disadvantage, if not disaster, to himself, with handsome and inordinate profit to the other. Both recognize frankly that the increase in Third Avenue property values flowing from the recent demolition of the elevated railroad structure has colored their point of view.
Though the lease formula or formulas of like tenor have been used for years in long-term leases, there seems a dearth of judicial authority construing them. Ordinarily a legally imposed restriction on the use of land is a factor properly to be taken into account in fixing its value, even as vacant and unimproved. That was the holding in Sherman v. Clarke (42 *636 N. Y. L. J., Feb. 19, 1910, p. 2133, col. 3) decided at Special Term and not otherwise reported, on which the defendant here leans heavily. However, I find an important distinction between Sherman v. Clarke (supra) and Terry v. Moore (3 Misc. 290) also cited by the defendant and the present case. In neither of the cited cases did the formula contain the phrase found in the underlying lease with which we are here concerned “ free of lease and unencumbered. ’’ In my opinion, this phrase is critical and determinative of the present controversy.
The defendant argues that the words “ free of lease ” were intended to exclude from the value of the vacant land any enhancement from the existence of a long-term lease yielding an assured income. It seems self-evident that, by like reasoning, the depressing effect of a lease with a low or inadequate rent would equally have to be disregarded. If the phrase ‘ ‘ free of lease ” is given its plain and natural meaning, the lease in its entirety must be eliminated from consideration, whether its provisions spell good or ill fortune for one party or the other. The restriction on use, which, according to the defendant’s contention, impairs the value of the land, if imposed at all, is imposed solely by the underlying lease. The broad question whether a restrictive covenant in a deed or like instrument, affecting the value of the land, may be considered is not before the court. The precise question is whether the asserted limitation on use, created by the lease before the court, may be taken into account in applying a formula which prescribes that the land is to be valued “ free of lease.” In my opinion it would be repugnant to the language employed to hold that the limitation on use springing exclusively from the lease itself may be treated by the arbitrators as an element of value. Whatever else the parties may have had in mind, it is inconceivable that when they declared explicitly that the land be valued ‘ ‘ free of lease ”, they intended that the arbitrators might give heed to the very lease which so declared. Such a ruling would delete the phrase “ free of lease ” from the formula.
The defendant invokes the doctrine amply fortified by authority that, in interpreting contracts, a result which is harsh or unreasonable or places one party at the mercy of the other is to be avoided. The doctrine, however, becomes operative only when there is ambiguity. It does not permit the court to override plain language or to make a new agreement. (Heller & Henretig v. 3620-168th St., Inc., 302 N. Y. 326; Hartigan v. Casualty Co. of America, 227 N. Y. 175.) The language here is free from ambiguity.
*637 It is accordingly held that the land is to be valued in accordance with the formula of the underlying lease, without treating as an element of value the restrictions on user flowing from the lease.
The defendant’s motion for summary judgment is denied and its counterclaim is dismissed. The plaintiffs’ motion for summary judgment is granted.
Settle order and judgment.