UNITED EQUITIES, INC., Respondent, v. MARDORDIC REALTY CO., INC., Appellant.

First Department, June 30, 1959.

*Joseph M. Callahan* of counsel (*Joseph R. Shaughnessy* and *Louis A. Craco* with him on the brief; *Cox, Treanor & Shaughnessy,* attorneys), for appellant.

*Harold H. Levin* of counsel (*Allen J. Feinstein* and *Martin J. Oppenheimer* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for respondent.

McNally, J. In an action for a declaratory judgment, this appeal is from an order granting plaintiff's motion for summary judgment and denying defendant's cross motion for summary judgment, and from the judgment thereon entered.

Involved is the construction of a formula for the determination of the rent applicable to a renewal term of 21 years contained in the modification of lease dated May 6, 1947 made between the parties. Said formula is as follows: " a sum equal to six per cent of the fair market value of the land covered by the first renewal lease as then fixed and determined by appraisal as hereinafter provided, but in no event less than the rental for the last year of the preceding term as hereby fixed ".

The lease is dated August 31, 1937. It provides: " the said premises are now in the possession of the lessors, free from all restrictions arising from grant that would operate to prevent the erection and operation of the garage hereinafter mentioned."

However, the lease also provides: " 8. AND it is agreed that the premises hereby demised shall be used and occupied by the Lessee, its successors or assigns, as a place for the construction, operation and maintenance of an Automobile Garage, Salesroom and Repair Shop, *or for any other ordinary business,* without the consent of the Lessor, provided that said premises may not

be used for any business in the nature of a nuisance; nor will it permit or suffer them to be so used." (Emphasis supplied.)

The modified lease enables the plaintiff lessee to alter or demolish existing buildings and erect a new building subject to prior approval of the plans and specifications by the defendant lessor which covenants not to unreasonably withhold approval of the plans and specifications if they provide for a " building or buildings of a character of construction equal to the building now erected on the premises ".

The original term commenced April 1, 1937 and terminated March 31, 1958. The modification of May 6, 1947 provides for two renewals at the option of the lessee, the first for a period of 21 years commencing April 1, 1958, and the second for a period of 21 years commencing April 1, 1979.

The parties are bound by the provisions of the formula upon which the rental for the first renewal period is to be based. A new contract may not be made for the parties under the guise of construction. (*Heller* v. *Pope,* 250 N. Y. 132, 135; *Ackman* v. *Toren, Inc.,* 6 A D 2d 427, affd. 6 N Y 2d 720.) The parties agreed to base the rental upon " the fair market value of the land." Unless there be express provision to the contrary, the provisions of the lease between the parties insofar as they affect the fair market value of the land must be given effect. However, the fair market value of the land should reflect " the most advantageous use to which it could be put." (*Moore* v. *Eadie,* 245 N. Y. 166, 170.)

This case is unlike *Ruth* v. *S. Z. B. Corp.* (2 Misc 2d 631, 634, affd. 2 A D 2d 970) wherein provision was made for basing the rental upon the fair value of the land " free of lease and unencumbered." Here, there is no language in the lease or modification thereof which excludes them in the determination of the fair market value of the land. The fair market value of the land is therefore to be determined by reference to the term of and the renewal options contained in the lease and modification thereof, and, in addition, the restrictions, if any, therein affecting the land.

The respondent lessee asserts that the lease restricts the use of the land to the operation and maintenance of an automobile garage. The demise of the premises contained in the original lease dated August 31, 1937 provides that the premises are in the possession of the lessor free from restrictions arising from grant that would prevent the erection and operation of the garage mentioned in the lease. However, paragraph 8 thereof provides that the premises shall be used as an automobile garage

'' or for any other ordinary business, without the consent of the Lessor ''.

We construe the language contained in the demising clause to be in the nature of a guarantee or warranty on the part of the lessor against any restriction arising from grant which would prevent the erection and operation of the garage by the tenant. (Cf. *Municipal Metallic Bed Mfg. Corp.* v. *Dobbs,* 253 N. Y. 313.) We construe paragraph 8 of the lease as descriptive of the intended use of the demised premises. A restriction will not be implied and in the absence of provision to the contrary a lessee may occupy and use the demised premises in any lawful way. (*Bovin* v. *Galitzka,* 250 N. Y. 228, 231; *57th St. Luce Corp.* v. *General Motors Corp.,* 182 Misc. 164, affd. 267 App. Div. 978, affd. 293 N. Y. 717.) Here, the lease expressly provides, in addition to the operation of a garage, for the use of the premises '' for any other ordinary business ''.

The final order herein provides, in part: '' that the value of the land demised therein * * * shall be its value as one parcel at its full and fair worth * * * taking into account and giving effect to its agreed and present use as a garage and any other restrictions or incumbrances contained in said Lease and Supplemental Lease.''

The opinion of Special Term states (16 Misc 2d 996, 1001): '' The conclusion is plain that the appraisers must value the fair market value of the land * * * recognizing that between buyer and seller dealing at arms' length and under no compulsion the fee is encumbered by this 42-year term of land appropriated to garage use.''

The final order, in the light of the opinion of Special Term, requires the appraisal of the land to be made as '' encumbered '' by the term of said lease and the said use restriction therein contained. In our view the effect on the appraisal of the term of the lease is an issue in this action and has been passed on by Special Term. In any event, assuming that the effect of the term of the lease was not tendered as an issue, and was not passed on by Special Term, we, nevertheless, are of the opinion that we are not limited to a choice between the opposing constructions urged herein but can give to the lease a meaning conceivably different from that which either party attached to the verbiage. (*Rentways* v. *O'Neill Milk & Cream Co.,* 308 N. Y. 342, 349.)

While we arrive at the conclusion that the value of the land should be appraised for the best use that it can be put to, and not only for the use as a garage, we hold consideration should

be given to the term of the lease and the renewal options therein in determining the use to which the land can be put. The rentals reserved in the lease, the advantage or disadvantage of possible improvements, which the minority apprehend will distort the appraisal process, become irrelevant under the formula we enunciate. The only limitation upon value, if any, is the number of years the most advantageous use of the land can be enjoyed under the lease.

The order and judgment appealed from should be modified to provide that the appraisal of the fair market value of the land demised, for the purpose of establishing the annual rental for the renewal period commencing April 1, 1958, shall be made on the basis of the best use to which the land can be put and not limited to improvement as a garage, consideration, however, to be given to the term and renewal options affecting the land provided for and contained in said lease and modification thereof. The order and judgment otherwise should be affirmed, without costs.

BREITEL, J. (dissenting). The only question submitted in this action for a declaratory judgment is whether the language in the subject lease legally restricts the use of the premises to related automotive purposes. Not only is this the sole question concerning which the parties have asked for a judicial determination, but both have submitted it as the only material element at issue in the appraisal of the land for the purpose of fixing the rent.

The court is unanimous in disagreeing with Special Term and finding that the purpose clause of the lease is merely descriptive and does not impose any legal restrictions on the use of the premises. Hence, on the only question of law submitted to the court there is unanimity.

The majority, however, has undertaken to decide a further question which apparently did not disturb the appraisers or able counsel for the present landlord and tenant. Going beyond the prayers in the pleadings and on the motions, the majority is instructing the appraisers to take into consideration the economic fact that the premises are encumbered by a renewed lease for a 21-year term, with a further right of renewal for 21 years. In this respect there is not only being decided more than the disputed legal question submitted, but the appraisers may be placed in a difficult, if not impossible, position.

Since this is an action for a declaratory judgment, the court is asked and is empowered merely to declare the rights of the parties concerning their jural relations with respect to which

there is a bona fide dispute. (See, e.g., *Wardrop Co.* v. *Fairfield Gardens,* 237 App. Div. 605; *Goodman & Co.* v. *New York Tel. Co.,* 309 N. Y. 258; *Matter of Smith,* 242 App. Div. 832; Borchard, Declaratory Judgments [2d ed.], p. 29 *et seq.*) Beyond that, our courts do not determine questions of law merely — or for that matter, economic questions — in the absence of granting relief in conventional form. (Rules Civ. Prac., rules 211, 212; see, e.g., *James* v. *Alderton Dock Yards,* 256 N. Y. 298, 304–305; *Matter of State Ind. Comm.,* 224 N. Y. 13; *Tompkins, Inc.,* v. *Security Trust Co.,* 277 App. Div. 1090; 1 Anderson, Declaratory Judgments [2d ed.], § 9 *et seq.*) Most disturbing, however, is the fact that the majority's view may have created a dispute where none, so far as is known, existed before.

The case arises in odd fashion. The parties, or their predecessors, by their lease contract had agreed that the land value upon which the rental was to be based was to be determined by appraisers. The appraisers having disagreed with respect to whether the lease legally restricted the use of the premises, the court's determination has been sought on that sole question of law.* Hence, for all that one may know, the appraisers may have already determined the effect of the most recently renewed lease, and the further right to renew, on the value of the land.

The procedural and jurisdictional questions are not all. There is also serious difficulty in instructing the appraisers that in valuing the land they should take into consideration the existence and term of the lease. Whether a lease for any term, short or long, increases or decreases the land value, as compared with its value if sold in fee simple, obviously depends on whether the landlord's rights under the lease, particularly with respect to the right to receive rent, are valuable or not. A lease in which there is reserved a high rent will increase the land value. A lease in which the rent reserved is inadequate will decrease the land value, as compared with its value free and clear of any leasehold.

The foregoing is not only true with respect to the right to receive rent, however. A lease under which the landlord will take title to the buildings erected on the land by the tenant at the expiration of the lease may increase or decrease the value of the freehold, depending upon whether the buildings increase

---

* Neither side, however, raises the question whether that, too, did not fall within the purview of the appraisers. Be that as it may, this court in *Ruth* v. *S. Z. B. Corp.* (2 A D 2d 970, affg. 2 Misc 2d 631) was confronted with a similar situation and a declaratory judgment, as requested by the parties, was granted. This surely is warrant for the court now to grant the relief requested by the parties, and with that there is no quarrel.

the value of the land or simply burden the landlord with the cost of demolition or reconstruction.

The parallels may be extended further. Yet, it is to fix the rent under the lease that the appraisal and this litigation were instituted. As a consequence, in determining the land value, to look to the lease term, even as only one of several factors, may involve an appraiser in an inescapable circle of reasoning.

The problem last discussed is not avoided facilely by limiting the appraisers to looking merely to the term of the renewed lease and the further right of renewal — on the theory that the term may affect the economic, as distinguished from the legal, use to which the tenant may put the land. For, a lease term abstracted from the other lease covenants, including that for the payment of rent, is an economic fiction, giving no index of value. Actually, in this case the point, to whatever extent it may have validity, becomes almost immaterial, since there is a possible term of 42 years involved which will support the amortization of most, if not all, buildings constructed for profit, or just short of it.

But there is still a further salient deficiency in reasoning which would relate the leasehold to the land value. The contract between the parties calls for an evaluation of the land. The use of the land as such is not legally restricted, as the court has found. Quite irrevelant to the land use is any economic restriction on the tenant in the use it may make of the land. Put another way, the contract calls for the evaluation of the land based on its highest economic use, not for the evaluation of the leasehold based on its highest economic use. The purpose of such valuation clauses is to reimburse the owner for the value of his land, not to determine the economic rent the tenant can profitably afford to pay.

On the analysis made, therefore, the taking into consideration by the appraisers of the mere existence of the renewed lease, and the right of a further renewal, involves hardly less than an economic renvoi. Of course, whether this be so is not of as serious moment as the fact that the court in a declaratory judgment action is deciding a question not submitted to it as one in dispute. Moreover, the matter determined without submission of the parties is a purely economic one, namely, what effect a lease has on the value of the underlying freehold, and presumably, that is precisely the function of the appraisers and not the court.

Accordingly, the order of Special Term should be reversed on the law, plaintiff's motion for summary judgment denied,

and defendant's motion for summary judgment granted in accordance with its prayer for relief, with costs to defendant-appellant.

BOTEIN, P. J., and RABIN, J., concur with McNALLY, J.; BREITEL, J., dissents and votes to reverse and grant summary judgment to defendant in opinion, in which M. M. FRANK, J., concurs.

Order and judgment modified to provide that the appraisal of the fair market value of the land demised, for the purpose of establishing the annual rental for the renewal period commencing April 1, 1958, shall be made on the basis of the best use to which the land can be put and not limited to improvement as a garage, consideration, however, to be given to the term and renewal options affecting the land provided for and contained in said lease and modification thereof, and, as so modified, affirmed, without costs.