Morton FUNGER et al., Appellants,

v.

Albert D. MAIZELS et al., Appellees.

No. 10571.

District of Columbia Court of Appeals.

Argued Nov. 11, 1976.

Decided Sept. 1, 1977.

---

Robert M. Scott, Washington, D. C., with whom Leonard C. Greenebaum, Washington, D. C., was on the brief, for appellants.

Albert E. Arent, Washington, D. C., with whom John M. Bray and Thomas P. Gilliss, Washington, D. C., were on the brief, for appellees.

Before KERN, GALLAGHER and MACK, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal from a judgment of the Superior Court, Civil Division, granting summary judgment in favor of appellees (hereinafter referred to as Landlords) in a suit by appellants (hereinafter referred to as Tenants) seeking a declaratory judgment to obtain a construction of a provision in two long-term ground leases. Tenants also sought to vacate the appraisal submitted on behalf of the Landlords. Instead of permitting the two appraisers to select a third appraiser whose determination would govern under the lease, the Tenants instituted suit. The parties filed cross-motions for summary judgment. In addition to granting the Landlords' motion for summary judgment, the court also directed the parties to appoint a third appraiser.

On April 1, 1964, Tenants entered into two separate but substantially identical 99-year ground leases, one with the Landlords Maizels and one with the Landlords Lewises and Gratzes. A fixed annual rental fee for the initial ten-year period was specified in the lease. It provides for new rental fees for every ten-year period. Paragraph 29 sets out the method for appraising the land should the parties fail to agree as to the fair value of the property for the purpose of computing a new rental fee:

29. *Appraisal.*

The appraised fair value of the Leased Land, required to be periodically as-

certained pursuant to the provisions of paragraph (b) of § 2 hereof, and any other appraisal of the Leased Land and/or improvements thereon and/or any interest therein that may at any time be required in the proper enforcement of the provisions of this Lease, shall be made and determined as follows: Starting thirty (30) days prior to the date of which any such interest is to be valued (or as soon as practicable after that date as it becomes known that an appraisal is required) Landlord and Tenant shall attempt to reach mutual agreement, in writing, as to the fair value of the property to be valued. If they reach such agreement within a thirty-day period, said agreement shall govern. If they fail to reach such an agreement within said thirty-day period, they shall each appoint, in writing, one appraiser. If said two appraisers agree, their joint determination shall govern. If said two appraisers cannot reach agreement within thirty (30) days after their appointment, they shall promptly appoint, in writing, a third appraiser, and the determination of said third appraiser shall govern; provided, however, that if the determination of said third appraiser is below the lower determination of the first two appraisers, the lower determination of the first two appraisers shall govern; provided, further, that if the determination of said third appraiser is above the higher determination of the first two appraisers, the higher determination of the first two appraisers shall govern. Any appraisers appointed hereunder shall be qualified (by training and experience), disinterested, and members in good standing of the American Institute of Real Estate Appraisers (or any organization successor thereto). All appraisal reports shall be rendered in writing to both Landlord and Tenant and shall be signed. If appraisers are appointed hereunder, absent fraud or bad faith, the appraised value as determined by them hereunder shall be final and conclusive for the purpose said appraisal was made. Landlord and Tenant shall each pay the fee of their own ap-

praiser and each shall pay one-half (½) of the fee of any third appraiser.

Paragraph 2(b) dictates the manner in which the annual net rental is to be determined once the appraised value of the leased land has been determined:

2. *Annual Net Rental.*

  \*    \*    \*    \*    \*    \*

(b) For each of the following nine periods, to wit, the eight consecutive ten-year periods commencing on the first day of the eleventh Lease Year, and the nine-year period commencing on the first day of the ninety-first Lease Year, the Annual Net Rental shall be a sum (to be computed separately for, and as of the first day of, each of said nine periods) equal to the greater of the following: (A) The sum of [the rent stated for the initial ten-year period] or (B) Twelve percent (12%) of the appraised value of the Leased Land as of the first day of said period. Said appraisals shall be made, as provided in § 29 hereof, *as if the Leased Land were vacant, unencumbered, unimproved, and not under Lease.* [Emphasis added.]

The dispute between Tenants and Landlords is over the interpretation of the last sentence of Paragraph 2(b) and, specifically, the issue is whether the language used there precludes the appraisers from giving a value to the property which includes an increment of value arising from the land's potential for assembly. In granting summary judgment in favor of the Landlords, the trial court adopted their interpretation of the disputed language and ruled that the language "does not express any intention of the parties . . . to exclude from value considerations any potential for assembly which each parcel may have."

■ Since the issue presented for our consideration is the correct interpretation of the lease unaided by evidence extrinsic to the document, this court will review de novo the provisions in dispute. *Marceron v. Chevy Chase Services, Inc.,* 103 U.S.App. D.C. 303, 258 F.2d 155 (1958). Because the parties were unable to reach agreement

upon the fair value of the property involved, the appraisal mechanism in Paragraph 29 became operative. The appraisers who are appointed pursuant to that paragraph are directed to ascertain the "appraised fair value." The phrase "fair value" is synonymous with fair market value. *Bullock's, Inc. v. Security-First National Bank of Los Angeles,* 160 Cal.App.2d 277, 325 P.2d 185 (1958). In determining the fair value of property, appraisers have been guided by the following judicially approved standard: the property shall be valued in terms of its highest and best use. *See, e. g., Eltinge & Graziadio Development Co. v. Childs,* 49 Cal.App.3d 294, 298, 122 Cal.Rptr. 369, 371 (1975); *Tureman v. Altman,* 361 Mo. 1220, 1224, 239 S.W.2d 304, 311 (1951). That the highest and best use of a parcel of land can be realized only through its combination with other property does not mean that this use must be excluded from consideration in the valuation of the land if there is a reasonable possibility of combination or assemblage. *Olson v. United States,* 292 U.S. 246, 256–57, 54 S.Ct. 704, 78 L.Ed. 1236 (1934).

It is undisputed that potential assemblage value is a legitimate valuation factor generally. Tenants' principal contention is that the highest and best use standard has been restricted by the last sentence in Paragraph 2(b):

> Said appraisal shall be made . . . as if the Leased Land were vacant, unencumbered, unimproved, and not under Lease.

It is the Tenants' position that these conditions preclude the appraisers from giving any consideration to potential for assembly in valuing the property. Tenants contend that the conditions of the lease require that the particular parcel be given an appraisal value based upon its worth "on its own individual merits at the time of appraisal [as] if it were then standing as a vacant lot without any liens or leases on it."[1] The economic consideration underlying the dispute is that appellants' appraiser reached a figure which did not take into account assemblage potential. Appellees' appraiser took that factor into account. The variance was a valuation of $90 per square foot when appraised on appellants' theory of the lease and $150 per square foot when appraised on appellees' theory.

■ The words "vacant," "unencumbered" and "unimproved" and the phrase "not under Lease" do not manifest an intention of the parties to preclude the appraisers from considering the potential assemblage value of the property. The words "vacant" and "unimproved" have reference to the physical state of the property. The appraisers are required not to consider an office building or other improvements on the leased land. The property is also to be appraised as if it were "unencumbered." This means that the appraisers must disregard any charge or burden of financial obligations, mortgages or liens in valuing the property. *See City of Crown Point v. Henderlong Lumber Co.,* 137 Ind.App. 662, 667, 206 N.E.2d 890, 896 (1965). Finally, an appraisal is to be made as if the leased land were "not under Lease." The significance of this instruction is that an existing lease must be eliminated from consideration in the land valuation process, either positively or negatively. *Ruth v. S.Z.B. Corp.,* 2 Misc.2d 631, 153 N.Y.S.2d 163, *aff'd mem.,* 2 A.D.2d 970, 158 N.Y.S.2d 754 (1956).

■ Appellants assert that the appraisal here which takes into consideration assemblage potential of these parcels is necessarily based upon "rank speculation or conjecture." We do not discern that this factor is any more speculative than some other appraisal factors. The fact is that the parcels in question have been assembled with other parcels to permit the building existing on them. Tenants' argument that the lots should be valued on their "own individual merits" ignores the fact that a willing buyer would consider assembly potential a part of each lot's "individual merits." If assembly potential were not considered a part of the "fair value," the appraisal figure results in something other than the "fair value" of the land.

---

1. Brief for Appellant at 5.

It is admitted that the rental amount for the initial ten-year period of the lease took into account the potential for assembly factor. Appellants would now have this factor removed from the periodic appraisals for the remainder of the lease. The effect of this would be to read out of the lease, in substantial part, the escalation factor over the remaining term of the lease (89 years).[2] We see no basis in the lease for such a departure.

We conclude the lease requirement that appraisals shall be made "as if the Leased Land were vacant, unencumbered, unimproved, and not under Lease" does not on this record preclude from the appraisal the usual consideration of potential for assembly.

*Affirmed.*

---

**2.** This is demonstrated by the current disparity between the $90 per square foot and $150 per square foot variance referred to earlier.