OPINION of the court
David B. Saxe, J.
The principal issues that must be resolved in this proceeding involving the appraisal of certain commercial property in lower Manhattan is as follows: (a) What method of appraisal may be utilized if the agreement for appraisal has not specified a particular method of valuation? and (b) What effect would the existence of the lease between the parties have on the appraisers’ determination of value?
The essential facts are as follows:
The plaintiff’s predecessor had leased the premises, 2 Broadway, New York, New York, from defendant’s predecessor in interest in 1956. The lease as amended, provided for a term of 50 years and with a fixed rental for the first 25 years. Article 11 of the lease provided that the rental for the remaining 25 years (commencing in 1981) would be agreed upon by the parties, or in case of their failure to *875 agree, a sum per year equal to 5% of the then value of the land (the land being considered as vacant and unimproved) as determined by an appraisal.
The lease set out the appraisal procedure to be followed. The landlord and the tenant were each to name an appraiser. The two appraisers would then meet and attempt to agree on the value of the property. In the event of their failure to agree, the two appraisers were to appoint a third (impartial) appraiser. A decision concurred in by any two arbitrators was to be final and binding upon the parties. The lease said nothing about the method of appraisal or the procedural rights of the parties.
In 1981, the parties attempted without success to negotiate new terms. The defendant then invoked the appraisal procedure and appointed James Austrian to serve as its appraiser. Plaintiff thereafter appointed Joseph Savilia to serve as its appraiser. Austrian and Savilia were unable to come to agreement on value and therefore appointed Alton Marshall as the third appraiser. Austrian and Savilia each provided Marshall with a summary report reflecting their respective views. On March 8, 1982, the attorney for the plaintiff appeared before Austrian and Marshall and argued for the application of the market value approach to appraisal (based upon the consideration of sale prices for similar properties). The plaintiff maintains that its counsel requested an exchange of the respective reports of Savilia and Austrian, but that the defendant refused to exchange reports. The defendant denies that such a request was made, but maintains that in any event, plaintiff was not entitled to an exchange of reports.
Marshall ultimately arrived at his own valuation, using both the market data technique (which involves capitalizing the net income stream from a hypothetical development of the subject property and deducting from that capitalized figure the cost of constructing the development so as to arrive at the land value) and the land residual technique. Marshall found the value to be $550 per square foot or $40,200,000. Savilia (using the market data technique) found the value to be $324 per square foot or $23,700,000. Austrian using both techniques found the value to be $855 per square foot or $62,300,000.
*876 After a series of meetings, Marshall and Austrian agreed to a value of $40,200,000 and rendered a document entitled “Determination of Appraisers”. Savilia then filed a “dissenting determination”.
On April 26, 1982, the plaintiff commenced this action, seeking to set aside the appraisal. The complaint, inter alia, alleges that: (a) Marshall acted contrary to applicable law by using the land residual technique, when in fact, the market value technique was the only proper method of appraisal; (b) Marshall arrived at his figures assuming that the land was totally free from encumbrances, when, in fact, he should have taken into account the lease as an encumbrance; (c) the plaintiff’s rights were violated in that plaintiff did not receive a copy of Austrian’s report and did not have an opportunity to rebut the findings of the report.
Where the appraisal clause in a lease does not set forth the methods and procedures to be utilized, courts give the appraisers wide latitude. It is recognized that appraisal is not an exact science. Often the appraisers can do little more than arrive at an educated guess at what a vacant piece of land at a particular location is worth. (Rice v Ritz Assoc., 88 AD2d 513.) Courts will generally uphold the appraisal as long as the appraisers proceeded in good faith, without bias or fraud. An appraisal is not conducted in the same manner as a judicial hearing, but may be made in any manner which is fair and equitable. (Moore v Eadie, 245 NY 166.) Additionally, the mere fact that two appraisers confer outside the presence of the third will not invalidate the appraisal (Matter of Delmar Box Co. [Aetna Ins. Co.], 309 NY 60).
Appraisers are not restricted to a single method of valuation, unless the lease says otherwise (Ice Serv. Co. v Phipps Estates, 245 NY 393). Here, the appraisers were free to use the market value method, the land residual method or any other reasonable means of assessing value. The plaintiff cannot have the appraisal set aside merely on the ground that he disagreed with the methods used by two out of the three appraisers.
The plaintiff maintains that Marshall and Austrian did not give proper consideration to the existence of the lease as an encumbrance on the property. In United Equities v *877 Mardordic Realty Co. (8 AD2d 398, affd 7 NY2d 911), the court held that the existence of the lease as an encumbrance had to be considered. In that case, the appraisal clause referred to the value of the land, but did not specifically mention encumbrances. In 185 Lexington Holding Corp. v Holman (19 Misc 2d 521, affd 10 AD2d 569, affd 8 NY2d 965), where the appraisal clause referred to the value of the land only, without improvements, the court’s interpretation of the lease was that the parties intended that the valuation of the land was to be made without regard to encumbrances such as leases. In Plaza Hotel Assoc, v Wellington Assoc. (55 Misc 2d 483, affd 28 AD2d 1209, affd 22 NY2d 846), where the land was subject to a 20-year lease under which the premises had to be used as a hotel, the existence of the lease had to be considered because the premises were not used for the highest and best use, a commercial office building.
The instant case can be distinguished from Plaza in that the premises here are currently being put to the highest and best use, a commercial office structure. However, in light of the rapidly rising commercial rents in the City of New York, it is evident that whenever any commercial premises are subject to a long-term lease they are not being put to their highest and best use. The determination of the effect, if any, of the existing lease on the appraisal process should not be summarily made but should be left to the trial court.
Appraisers are not obligated to give the parties any formal notice to hear evidence. Appraisers can proceed even by ex parte investigation, as long as the parties have an opportunity to present their arguments to the appraisers regarding the matters in issue (Matter of Delmar Box Co. [Aetna Ins. Co.], supra). Here, however, the plaintiff allegedly was denied the right to examine and comment upon the report submitted by Austrian. Although the appraisers had a wide latitude in the procedures to be used, the parties still had the right to examine and to comment upon any evidence or materials relied upon by the appraisers. A denial of this right (if established) would be unreasonable and might well be grounds for setting aside the appraisal.
*878 This case presents triable issues of fact and law, including, but not limited to the consideration, if any, to be given to the lease as an encumbrance on the property and the alleged refusal of the appraisers to permit plaintiff to examine the Austrian report, which cannot be determined on the basis of the affidavits and exhibits submitted.
Both sides have moved for summary judgment in their motion papers. On the basis of this analysis, the motion and cross motion are denied.