Olympia & York 2 Broadway Company, Respondent-Appellant, v Produce Exchange Realty Trust, Appellant-Respondent.

First Department, May 12, 1983

466

APPEARANCES OF COUNSEL

*Julius Berman* of counsel (*William C. Zifchak* and *Michael Starr* with him on the brief; *Kaye, Scholer, Fierman, Hays & Handler,* attorneys), for respondent-appellant.

*Ambrose Doskow* of counsel (*William W. Golub* and *Charles A. Crum* with him on the brief; *Rosenman Colin Freund Lewis & Cohen,* attorneys), for appellant-respondent.

OPINION OF THE COURT

FEIN, J.

Defendant fee owner appeals and plaintiff lessee cross-appeals from an order of Supreme Court, New York County (SAXE, J.), entered October 13, 1982 denying summary judgment to both, finding there were triable issues (115 Misc 2d 874).

The underlying issue here is the appropriate method to appraise commercial property at 2 Broadway in Manhattan. Plaintiff's predecessor had leased the premises from defendant's predecessor in 1956. The amended lease provided for a term of 50 years with a fixed rental for the first 25 years and with the rental for the remaining 25 years to be determined as provided in the lease as amended, for the period beginning 1981. The rental was to be a sum equal to 5% of the value of the land, as determined by appraisal, the land to be considered as vacant and unimproved. The lease required each of the two parties to name an "arbitrator or appraiser", who would meet and attempt to agree on a value. If no agreement could be reached a third "arbitrator or appraiser" was to be appointed by the two appraisers and a decision on value concurred in by two "arbitrators or appraisers" would be final and binding on the parties.

In 1981 the parties were unable to agree on the new terms for the 25-year balance of the lease whereupon defendant invoked the appraisal procedure by appointing James Austrian as its appraiser and plaintiff thereafter designated Joseph Savilia. These two were unable to come to an agreement as to value or as to a third appraiser. Accordingly, as provided in the lease, the parties appointed Alton Marshall as the third appraiser. Austrian and Savilia provided Marshall with summaries reflecting their views as to value.

Savilia concluded that the value of the property was $324 per square foot for a total of $23,700,000. Austrian valued the property at $855 per square foot for a total of $62,300,000. Both were premised upon the value of the land as vacant and unimproved to be developed for use as an office building. Savilia based his determination upon the market data technique under which an appraiser adjusts prices by consideration of actual sales of comparable properties to reflect the difference between these comparable properties and the property being appraised. Austrian used that technique and a land residual technique, which involved capitalizing net income from a hypothetical development of the land and deducting from that the cost of constructing the development. On March 8, 1982 Marshall and Austrian met with plaintiff's attorney. Plaintiff contends that it requested an exchange of the reports of the two appraisers but that defendant refused to exchange any report. Defendant denies this. Alternatively defendant claims there is no right to an exchange. After a series of meetings of the appraisers Marshall determined that the value of the land was $550 per square foot or $40,200,000, using a combination of the market data technique and the land residual method. Subsequently Austrian joined in that determination to effect the required concurrence of two appraisers. However, plaintiff's appraiser Savilia refused to so join in the decision.

Plaintiff thereupon brought this action to set aside the appraisal and to declare the "true value of the land", contending that (1) Marshall acted improperly in using the land residual technique and that the market value technique was the only proper method to appraise the land; (2)

Marshall had arrived at figures assuming the land was totally free of encumbrances, when in fact he knew it was subject to the lease which should have been taken into account as an encumbrance in lessening the total value; and (3) plaintiff's rights were violated since plaintiff did not receive a copy of Austrian's report and had no opportunity to rebut his findings and opinion. These motions for summary judgment ensued.

Special Term carefully set forth the operative standards and principles applicable to appraisals, noting that appraisal is not an exact science and that the determination of an appraiser is to be upheld as long as the appraiser proceeds in good faith and without bias or fraud. Appraisers are not limited to a single method of valuation unless the lease provides otherwise (*Ice Serv. Co. v Phipps Estates,* 245 NY 393). On that basis, the court held the appraisers were free to use the market value method or the land residual method or any other reasonable method in assessing value. The court accordingly rejected the claim by plaintiff that the only proper method to appraise the property was the market value method used in tax certiorari proceedings to fix value based upon comparable sales.

Nevertheless, Special Term held that there may have been improper action in not permitting the plaintiff to examine the report of defendant's appraiser. The court recognized that appraisers can proceed even upon an ex parte investigation, as long as each party has an opportunity to present his views and arguments (*Matter of Delmar Box Co. [Aetna Ins. Co.],* 309 NY 60). However, Special Term found some significance in the claim that plaintiff had been denied the right to comment on Austrian's reports. The court found (p 877) that denial of such a right "would be unreasonable and might well be grounds for setting aside the appraisal." Special Term concluded there was a triable issue of fact with respect to the alleged refusal of the appraisers to permit plaintiff to examine the Austrian report.

A triable issue was also found concerning the consideration, if any, to be given the lease as an encumbrance on the property. Plaintiff contended that Marshall and Austrian did not give appropriate consideration to the lease as an

encumbrance on the property in fixing value. The court found that the underlying lease and its provisions could have been considered in fixing value, since "in light of the rapidly rising commercial rents in the City * * * it is evident that whenever any commercial premises are subject to a long-term lease they are not being put to their highest and best use" (p 877). Since the court could not determine on the affidavits alone the effect, if any, of the existing lease on the appraisal process which had been followed, it concluded that this was a triable issue.

■ We disagree. There were no triable issues. The lease specifically provided for a determination of rental based upon value — a sum equal to 5% "of the then value of the land (said land to be considered as vacant and unimproved), as fixed and determined by appraisal, under the provisions of Article XII of the Lease". By thus specifically providing that the value of the land was to be considered as vacant and unimproved, the parties manifested a clear intention that existing structures, encumbrances and leases not be taken into account in fixing value. The language used in the lease does not vary significantly from that in *185 Lexington Holding Corp. v Holman* (19 Misc 2d 521, affd 10 AD2d 569, affd 8 NY2d 965). There the lease provided that after an initial term of 21 years the renewal term was to be a percentage of the value of the land only, without improvements, at the time of the appraisal. The court ruled this was the same as providing for the value of the land vacant and unimproved. Similarly, in *Ruth v S.Z.B. Corp.* (2 Misc 2d 631, affd 2 AD2d 970) it was held that the term vacant and unimproved was the same as the phrase without improvements. Accordingly, encumbrances, including the existing lease, were not to be taken into account.

In *Plaza Hotel Assoc. v Wellington Assoc.* (55 Misc 2d 483, affd 28 AD2d 1209, affd 22 NY2d 846) the lease provided for fixing the rental based upon "3% of the value of all of the land (wherever permitted by the context the word 'land' as herein used as intended to mean the land only, exclusive of the buildings and improvements thereon)" (55 Misc 2d, at p 485). Each of the appraisals in that case valued the land as if it were unencumbered by the lease and by the restrictions therein to the use of the

property as a hotel. The appraisal valued the property as though it were free and clear of any encumbrances, vacant and ready to be devoted to the highest and best use, a commercial multistory building. The court found that this was error and that there was nothing to show that the restrictions in the lease as to use of the property as a hotel were to be disregarded in valuing the land as if it were vacant and available for the highest and best use. Thus the court found *185 Lexington Holding (supra)* inapplicable. To conclude otherwise would subject the lessee to a rental based upon value of the property devoted to its highest and best possible use (a multistory building) when at the same time the lessee was restricted to a less valuable use as a hotel. In the present case, however, after noting the property was being used at its highest and best use as a commercial office structure, Special Term concluded that the long-term lease reduced its value since the property was not, by reason of the lease, being put to its highest and best use. The result manifestly overlooks that this lessee is enjoying the highest and best use of the property.

Referring to *United Equities v Mardordic Realty Co.* (8 AD2d 398, affd 7 NY2d 911), Special Term noted the holding that the existence of the lease as an encumbrance had to be considered. However, that lease formula to fix rental was expressly based upon a fixed percentage of "the fair market value of the land covered by the first renewal lease * * * but in no event less than the rental for the last year of the preceding term". That lease permitted the lessee to alter or demolish the building and erect a new building. The structure on the land was a garage, clearly not the best use of the land. There was no express provision requiring maintenance of the garage or excluding consideration of the lease and encumbrances as in *Ruth v S.Z.B. Corp. (supra)* or the value of the land only, without improvements at the time, as in *185 Lexington Holding Corp. (supra)*. On that basis, the court held that in fixing value the appraiser should fix the value based upon the best use that the land could be put to, not limited to use as a garage.

Our case is more nearly akin to *185 Lexington Holding Corp. (supra)* than to *United Equities (supra)*. Here as

noted, the lease directs fixing the value "of the land (said land to be considered as vacant and unimproved), as fixed and determined by appraisal". Moreover, the situation here is not at all like *Plaza Hotel (supra)*. This land was already being put to the best use possible as a commercial multistory building. Nor is there any basis to conclude that *United Equities (supra)* somehow overruled *185 Lexington Holding Corp. (supra)*. The latter was unanimously affirmed by this court five days after the Court of Appeals affirmed *United Equities*. The outcome in each case is dependent upon the terms of the lease.

On the basis of this analysis it is plain there are no triable issues. The construction of the lease in determining whether the appraisal procedure was proper is solely a matter of law. Since the lease provision here closely parallels the provision construed in *185 Lexington (supra)*, it must be concluded that the appraisers proceeded properly in determining the value of the land without considering this lease as an encumbrance.

■ Nor is there a triable issue arising out of the alleged refusal or failure of defendant to furnish plaintiff with a copy of Austrian's report. As noted by Special Term, appraisers are not obliged to give the parties notice or even to hear evidence. Appraisers may proceed ex parte as long as each party is afforded an opportunity to present his views as to the matter in dispute. (*Matter of Delmar Box Co. [Aetna Ins. Co.]*, 309 NY 60, *supra*.) Although Special Term cited this rule, it incorrectly concluded that plaintiff had a right to see the appraisal reports submitted by defendant. Since appraisers may proceed ex parte, it cannot be concluded that they cannot proceed unless each party has an opportunity to review the other's submissions and reply. All that *Delmar (supra)* and other cases hold is that a party have an opportunity to submit his view to the appraiser. It is undisputed that that was done in this case. Accordingly, there is no triable issue in this respect precluding summary relief.

*Gervant v New England Fire Ins. Co.* (306 NY 393), relied upon by plaintiff, has no bearing on the issue here involved. That case involved appraisal under a standard fire insurance policy. The appraisers had acted in violation

of the applicable standards to determine the value of the property after a fire. As set by the terms of the policy, coverage was for the actual cash value of the building. It is well settled this means value based upon consideration of any factor tending to affect value (*McAnarney v Newark Fire Ins. Co.,* 247 NY 176). In *Gervant* (*supra*) the appraiser determined value solely upon the basis of evidence of replacement cost less depreciation. In *McAnarney* the Court of Appeals had previously ruled this was not determinative of the actual cash value as set by the statute. Under those circumstances, the court found that the appraiser had acted improperly in excluding other pertinent factors bearing upon the actual cash value of the building. In its correct context, the opinion in *Gervant* is not authority for the conclusion that procedural due process requires an exchange of appraisers' reports in an appraisal proceeding. The determination in *Gervant* was reached solely because the appraiser disregarded the various factors which the contract between the parties required to be taken into account in determining value. Basing their determination solely upon replacement cost less depreciation was an improper and inappropriate method. In our case, there was no due process objection raised and none appears. There was no refusal on the part of the appraisers to permit the parties to offer their views and opinions on the issue. Moreover, the appraisers here met and discussed the matter before arriving at their respective determinations.

■ There is no merit to plaintiff's claim that the determination was improperly arrived at by compromise. Appraisers must act fairly and reasonably (*Ice Serv. Co. v Phipps Estates,* 245 NY 393, 399-400, *supra*). They are not required dogmatically to stick to their initial calculations, otherwise deadlock would be almost inevitable. Such a conclusion would require the court to determine value despite the parties' explicit agreement for a private determination (*Rice v Ritz Assoc.,* 88 AD2d 513, 514). In the absence of fraud, bias or bad faith, not here shown, the parties should be held to their agreement to submit their dispute to appraisers. The fact that one appraiser departed

from his original determination does not invalidate the ultimate determination.

 Each issue lacks merit. The appraisers were not limited to the market value technique as argued by plaintiff. There was no violation of any rights by the alleged refusal of defendant to furnish plaintiff with a copy of Austrian's report. Fixing the value of the land free of encumbrances and without considering the long-term lease in determining value was not error.

The order appealed from, Supreme Court, New York County (SAXE, J.), entered October 13, 1982, should be modified on the law to grant defendant's motion for summary judgment and otherwise affirmed with costs.

SANDLER, J. P., CARRO, MILONAS and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on October 13, 1982, unanimously modified, on the law, to grant defendant's motion for summary judgment and otherwise affirmed. Defendant-appellant-respondent shall recover of plaintiff-respondent-appellant $75 costs and disbursements of the cross appeals.