**L.B. DOGGETT, Gladys E. Doggett, and Downtown Parking Corporation, Appellants,**

v.

**McLACHLEN BANCSHARES CORPORATION, Appellee.**

No. 93–CV–1389.

District of Columbia Court of Appeals.

Argued May 24, 1995.

Decided Aug. 10, 1995.

---

Stephen M. Sacks, with whom Stephen Porter and Michael S. Solender, Washington, DC, were on the brief, for appellants.

John Siddeek, with whom James E. Coleman, Jr., Washington, DC, was on the brief, for appellee.

Before TERRY and SCHWELB, Associate Judges, and PRYOR,* Senior Judge.

PER CURIAM:

Appellants, L.B. Doggett, Jr., Gladys E. Doggett and Downtown Parking Corporation (collectively "Doggett" or "tenant"), appeal from an order of the trial court granting summary judgment in favor of appellee, McLachlen Bancshares Corporation ("McLachlen" or "landlord"). The tenant initiated the suit after the parties were unable to agree on an appraisal of land the landlord leased to the tenant. The tenant claimed that the appraisal the landlord used to compute the rent owed by the tenant did not comply with the lease and contained gross errors. On appeal, the tenant argues that (1) the trial court erred in not stating why it granted summary judgment to the landlord, and (2) the appraiser failed to follow the language of the lease and committed gross errors. Procedurally, the tenant claims that it has raised genuine issues of material fact which preclude the entry of summary judgment. We affirm.

### I.

On April 26, 1967, landlord McLachlen's predecessor in interest entered into a ninety-nine-year lease with tenant Doggett's predecessors in interest for real property located at 1100–04, 1106 & 1108 G Street, N.W. The tenant subsequently built an eleven-story building which still occupies the site. Article Three of the lease set forth the procedure for computing future rental payments:

Commencing with the 26th year ... the annual rental shall be adjusted so that it shall be 6% of the appraised value of the demised premises *as unimproved ground as hereinafter determined, valued on the basis of its use for the then existing improvements ...* The appraised value shall be determined in the following manner: Landlord may request an appraisal by an appraiser designated by it. The Tenant may either accept the appraisal or reject the appraisal in which latter event it may designate a second appraiser and the two appraisers shall select a third appraiser. Each appraiser shall make independent appraisals. The value determined by the third appraiser shall govern except that if the third appraisal is below the lower of the first two appraisals the lower of the first two appraisals shall be the appraised value. If the third appraisal is higher than the higher of the first two appraisals, the higher of the first two appraisals shall be the appraised value. '(Emphasis added.)

In order to comply with the first rental adjustment scheduled on May 15, 1992, the landlord submitted to the tenant an appraisal prepared by Lipman, Frizzell & Mitchell (Lipman), which valued the land at $9,650,-000. The tenant rejected this appraisal and submitted an appraisal of $5,000,000 prepared by Bolan Smart Associates (BSA). The landlord rejected the tenant's appraisal. Thereafter, Lipman and BSA selected Ratcliffe, Cali, Duffy, Hughes & Company (RCDH) to make the third appraisal. On June 22, 1993, RCDH appraised the property at a market value of $8,800,000. By letter dated June 18, 1993, the landlord stated that it intended to compute future rental payments using the RCDH appraisal.[1]

On July 6, 1993, the tenant filed a complaint seeking relief from the RCDH appraisal:

Neither the Lipman Appraisal nor the RCDH Appraisal followed the language of the Lease which specified that the Property should be valued on the basis of its use *for the then existing improvements,* nor

---

* *Senior Judge* BELSON was on the original panel that heard this case. After argument, *Senior Judge* BELSON recused himself from this case, and *Senior Judge* PRYOR was selected by lot to replace him.

1. Pursuant to an interim agreement between the parties, the tenant has made monthly payments to the landlord in an agreed upon amount since May 15, 1992.

complied with the standards set forth in the Lease governing appraisals, nor complied with the customary professional standards applicable to appraisals of this nature.[2] (Emphasis added).

The tenant asked the court for a declaratory judgment that the landlord could not properly apply the RCDH Appraisal to rental payments due under the lease as of May 15, 1992. The landlord moved for summary judgment on August 6, 1993, arguing that the tenant failed to allege any grounds upon which the RCDH appraisal was subject to legal challenge.[3]

The landlord also moved pursuant to Super.Ct.Civ.R. 26(c) to postpone the tenant's deposition of Dennis Duffy, the principal author of the RCDH appraisal, pending the trial court's ruling on the motion for summary judgment. The tenant filed its opposition to the landlord's motion for summary judgment on September 2, 1993, and submitted the affidavit of Richard Lampert, a fourth real estate appraiser, in support of its argument that there were genuine issues of material fact in dispute. On September 7, 1993, the trial court granted summary judgment in favor of the landlord without elaboration and entered final judgment on the complaint pursuant to Super.Ct.Civ.R. 54(b) on October 12, 1993.[4]

## II.

The tenant contends that the trial court must explain its reasoning when granting a motion for summary judgment and that its failure to do so warrants reversal.[5] According to the tenant, the trial court's failure to explain its decision "deprive[d] [tenant] of a fair proceeding and render[ed] judicial review of the decision of this Court meaningless."

■ Pursuant to Super.Ct.Civ.R. 52(a), "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or Rule 56...." Thus, there is no requirement that the trial court set forth its reasoning when granting summary judgment under Super.Ct.Civ.R. 56. We review the trial court's order de novo, Osei–Kuffnor v. Argana, 618 A.2d 712, 713 (D.C.1993), and assess the record independently. Colbert v. Georgetown Univ., 641 A.2d 469, 472 (D.C. 1994) (en banc). Accordingly, a statement of the trial judge's legal views, while helpful, is not essential.

The tenant relies on Simpson v. District of Columbia Office of Human Rights, 597 A.2d 392 (D.C.1991). We stated in Simpson that findings of fact and conclusions of law in support of summary judgment orders are not required, but that explanation of the court's reasoning is often desirable, especially where a motion is based on several discrete contentions and the order does not disclose the specific ground on which the court ruled. Simpson, supra, 597 A.2d at 395 n. 5. Simpson, however, did not impose a requirement that the trial court detail its reasoning in ruling upon motions for summary judgment. There being no such requirement, we find no error.

## III.

■ The tenant argues that the trial court erred in granting summary judgment because there are genuine issues of material fact in dispute. Summary judgment is appropriate if the pleadings, depositions, interrogatories, admissions, and any affidavits on file demonstrate that there are no material issues in dispute and if the moving party is entitled to judgment as a matter of law. Townsend v. Waldo, 640 A.2d 185, 187 (D.C. 1994). After the movant makes an initial showing that he is entitled to judgment as a matter of law, the non-moving party must demonstrate that there is a genuine issue of material fact requiring a trial. Id. "The

2. The tenant's complaint also sought to set aside the Lipman appraisal.

3. The landlord also filed a counterclaim for attorney's fees and costs.

4. The final judgment pursuant to Super.Ct.Civ.R. 54(b) terminated the action as to all claims and parties, including the landlord's counterclaim for costs and counsel fees.

5. In its reply brief, the tenant asks this court to "at the very least" remand the case back to the trial court for further findings.

requisite showing of a genuine issue for trial is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts." *Smith v. Washington Metro. Area Transit Auth.*, 631 A.2d 387, 390 (D.C.1993) (citations omitted). On appeal, this court conducts an independent review of the record and views the facts in the light most favorable to the non-moving party. *Id.*

The tenant makes two contentions in support of its claim that there were material facts in dispute warranting a trial. First, it claims that the RCDH appraisal "did not comply with the agreed-upon standard in the Lease that rent increases should be based on an appraisal which 'valued [the site] on the basis of its use for the then existing improvements.'" According to the tenant, RCDH valued the site based on its potential use for a hypothetical office building of the same density, ignoring the reality of what was there. Second, the tenant alleges that in determining the value of the property, RCDH made fundamental errors which were apparent on the face of the appraisal.

### A.

■■■ The parties in this case contracted to have the valuation of the property accomplished by an appraiser, rather than by the court. Under these circumstances, the appraiser's valuation is binding, and the courts will not question it in the absence of fraud or mistake. *Williams v. Williams*, 436 A.2d 1291, 1293 (D.C.1981). "To allow the courts routinely to second-guess the judgment of an appraiser chosen by the parties would serve only to undercut the efficacy of the parties' own agreement and to thwart the policy of encouraging informal and inexpensive resolutions of such matters." *Id.* In order to challenge the appraisal, therefore, the tenant must show that the appraisers have "mistaken their authority, departed from the submission, clearly misconceived their duties, acted upon some fundamental and apparent mistake or have been moved by fraud or bias." *Id.* (citing *Ice Serv. Co. v. Henry Phipps' Estates*, 245 N.Y. 393, 157 N.E. 506, 508 (1927)).

In the present case, two of the three appraisers who valued the property pursuant to the agreement—Lipman, the appraiser selected by the landlord, and RCDH, the appraiser selected by the landlord's designated appraiser and the tenant's designated appraiser—concluded that the property should be appraised at $8,800,000 or more. The tenant now asks the court to accept, instead, the opinion of a *fourth* appraiser who was not initially selected by any of the parties. Given the nature of the agreement, and in light of the parties' apparent determination to avoid the time and expense of complex litigation, the trial judge was understandably reluctant to enter the fray or to substitute his judgment for that of the professionals selected by the parties. We share his reluctance.

The tenant contended in its opposition to the landlord's motion for summary judgment that RCDH valued the "[s]ite's fee simple interest *improved* to its current density," rather than on its "use for the then existing improvements" as stated in the lease. Thus, RCDH valued the site based on the potential use for a hypothetical building of the same density, without taking into consideration the actual building's age, physical deterioration, occupancy rate, rental rates, and functional obsolescence. The tenant sought to support its claim with the affidavit of Richard Lampert, who had undertaken a thorough review of the RCDH appraisal. Mr. Lampert stated that by valuing the building based on a hypothetical structure of the same density, RCDH failed to comply with the language of the lease. Mr. Lampert noted that the landlord leased a portion of the property back from the tenant through a sublease. The landlord's rent on this property was computed from the current fair rental value of the property. Mr. Lampert stated that under RCDH's method, the lease and the sublease "would have called for the same building to be appraised one way for purposes of determining rent for the land and another entirely different way for purposes of determining the rent for the building."

The landlord argues that RCDH's appraisal was consistent with the lease agreement, that the tenant did not establish the contrary, and that there is no material factual

dispute. According to the landlord, the lease clearly indicates the parties' intention to value the site without regard to the structure actually on the land, but taking into account the type of use to which the site is being put. The landlord contends that RCDH valued the land according to its use as an eleven-story building, in conformity with the relevant provisions of the lease.

The basic dispute between the parties relates to the proper construction of the phrase "appraised value of the demised premises as unimproved ground ... valued on the basis of its use for the then existing improvements." The tenant contends that the appraiser must base its appraisal on the actual structure located on the property, and must take into account, among other things, its age and depreciation. The landlord argues, on the other hand, that the appraiser is required only to consider the type of use being made of the property.

■ The correct interpretation of an unambiguous lease is a question of law. *See Holland v. Hannan,* 456 A.2d 807, 815 (D.C. 1983) (summary judgment appropriate where contract unambiguous; question whether contract is unambiguous is one of law); *Funger v. Maizels,* 377 A.2d 70, 72 (D.C.1977); *Olympia & York 2 Broadway Co. v. Produce Exch. Realty Trust,* 93 A.D.2d 465, 462 N.Y.S.2d 456, 459 (1st Dept.1983). The lease specifies that the appraisal is to be valued on "unimproved ground," *i.e.,* the value of the land without the structure on it. *See Funger, supra,* 377 A.2d at 73. The lease further provides that the appraiser must base the property's value on "its use for the then existing improvements." The language of the lease, if accorded its everyday meaning, does not require the appraiser to consider the unique characteristics of the actual structure on the property when determining the "use for the then existing improvements." Thus, the tenant has failed to demonstrate that RCDH's interpretation is contrary to the language of the lease.[6]

■ The tenant has at best shown that RCDH "made a legal interpretation with which [the tenant] disagree[s], and over which reasonable minds might differ." *See Hirt v. Hervey,* 118 Ariz. 543, 547, 578 P.2d 624, 628 (Ct.App.1978). This court will defer to the appraiser's interpretation of the lease as long as it is reasonable and does not exceed the appraiser's authority. *Id.,* 578 P.2d at 628. Determinations by appraisers in circumstances of this kind are accorded deference comparable to that which is given to decisions by arbitrators. *Id.* 578 P.2d at 626; *See Bailey v. Timpone,* 75 Ill.2d 539, 27 Ill.Dec. 785, 788, 389 N.E.2d 1193, 1196 (1979) (allowing arbitrators, who were given authority to compute fair rental value of premises, to clarify term "gross income" as used in arbitration provision of lease). As the court stated in *Jordan Marsh Co. v. Beth Israel Hosp. Ass'n,* 331 Mass. 177, 118 N.E.2d 79 (1954), "[i]t is familiar law that an award made within the scope of the submission is not made invalid by a mistake of the arbitrator as to law or fact ... Even if he was mistaken in his interpretation of the legal effect of the contract, the award does not thereby become invalid. The parties received what they agreed to take, the honest judgment of the arbitrator as to a matter referred to him". *Id.,* 118 N.E.2d at 85.

Because the tenant has not shown that RCDH exceeded its authority or violated the terms of the lease, there is no issue of material fact requiring resolution at trial. We therefore uphold the trial court's grant of summary judgment with respect to this issue.

**B.**

■ The tenant next asserts that summary judgment was inappropriate in light of what it characterizes as a "pattern of anomalies, contradictions, fundamental errors and violations of accepted practice and professional standards" said to have been committed by RCDH in computing the ap-

---

**6.** None of the decisions cited by the tenant construes the phrase "valued on the basis of its use for the then existing improvements." Rather, the courts in these cases interpreted particular lease provisions to mean what they say. The tenant's argument is that if the appraisal was to be limited to the use of the land without considering the actual structure, the lease would have said so.

praisal. The tenant lists several examples of purported gross errors allegedly committed by RCDH in its appraisal: (1) RCDH allegedly contradicted itself by issuing an addendum to the appraisal, which quoted a value ⅒ of the value of the original appraisal;[7] (2) the sales relied on by RCDH to approximate the market value of the landlord's property are said to have borne little resemblance to the prevailing market in May 1992 and dealt with property substantially different from the appraised property; (3) RCDH allegedly erred in assuming that a hypothetical buyer could have obtained financing in the credit market prevailing in May 1992 and such an assumption allegedly conflicts with RCDH's statements that "tight credit requirements ... are likely to result in very limited growth over the next 2 to 3 years" and "traditional bank financing is not available for long-term deals;" and (4) RCDH's findings that office development on the site was economically feasible and that the site could have been developed immediately are said to have been contradicted rather than supported by facts in the appraisal.[8]

As stated earlier, a party may challenge an appraisal on the grounds of fraud, mistake, or gross error, showing prejudice or corruption. *Williams, supra,* 436 A.2d at 1293 (citing *Shoemaker v. United States,* 147 U.S. 282, 306, 13 S.Ct. 361, 393, 37 L.Ed. 170 (1893)). We conclude that the errors alleged by the tenant, though characterized by the tenant with unfavorable adjectives, do not rise to the level required by *Williams,* nor do they constitute "manifest mistakes." *See Steiner v. Appalachian Exploration, Inc.,* 31

Ohio App.3d 177, 509 N.E.2d 1271, 1273 (1986) (defining a manifest mistake as a mistake "of such character that the appraisers would have corrected it if they had been made aware of it, rather than a mere mistake of judgment"). Accordingly, the limited scope of judicial review of the appraiser's determinations is decisive, and the trial court properly granted summary judgment in favor of the landlord.

*Affirmed.*

7. The tenant claims that this addendum, which valued the land at $9.16 FAR (floor area ratio) under the Land Residual Technique, is a separate appraisal that is clearly inconsistent with RCDH's first appraisal of $84.00 FAR (under the Sales Comparison Method). The addendum, however, is RCDH's response to the tenant's insistence that it use the Land Residual Technique to appraise the property. RCDH sought to show how this method severely undervalued the property. There is nothing inconsistent in noting that a methodology which, in the appraiser's view, ought not to be used, leads to a result different from that obtained with the correct methodology.

8. Lampert also contends that RCDH should have used the Land Residual Technique to value the

land as vacant in addition to the Sales Comparison Method, and that RCDH thus made a fundamental error. An appraiser, however, may use any reasonable method of appraisal it deems appropriate, unless the lease specifies otherwise. *Olympia & York, supra,* 462 N.Y.S.2d at 458.

Lampert also noted that RCDH indicated in its appraisal that with office development, the Income to the Land would be $1.60 per FAR. He claimed that this was inconsistent with RCDH's ultimate appraisal of $84.00 FAR, and he cited the Appraisal Institute's statement that these two figures are "directly related." Under the authorities which we have discussed, however, such an alleged disparity or inconsistency in the numbers does not constitute the kind of fundamental error for which this court will set aside an appraisal.